## Paula VARGAS, Plaintiff,

v.

## Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.

### No. 87 Civ. 6026 (RWS).

United States District Court, S.D. New York.

April 14, 1989.

Paula Vargas, New York City, pro se.

Benito Romano, Acting U.S. Atty., S.D. N.Y., New York City, for defendant; Kathleen A. Zebrowski, Asst. U.S. Atty., of counsel.

OPINION

SWEET, District Judge.

Defendant Otis R. Bowen, M.D., Secretary of Health and Human Services (the "Secretary") has moved pursuant to Rule 12(c), Fed.R.Civ.P., for judgment on the pleadings affirming the Secretary's denial of Supplemental Security Income ("SSI") to plaintiff Paula Vargas ("Vargas") and dismissing the complaint. Vargas has applied for appointment of counsel. For the reasons set forth below, the Secretary's motion is granted and the complaint is dismissed, and Vargas's application for appointment of counsel is denied.

*The Facts*

Vargas is a forty-five year old widow with two children. She was born in Puerto Rico and neither speaks nor understands English. Vargas never advanced beyond the first grade and has not worked for at least the past fifteen years.

At a hearing before Administrative Law Judge Quintin Morales–Ramirez (the "ALJ") held March 5, 1987, Vargas testified that her disability prevented her from working. She identified diabetes and asthma as her principal ailments, and complained of dizziness, headaches, poor vision, and pain in her feet, knees, back, chest, and hands. She claimed she could walk less than a block, could stand for no more than a half hour, and could sit for no more than an hour. She also testified that her asthma and coughing prevented her from sleeping soundly.

The record contains a variety of evidence relating to Vargas's alleged disability.

On January 18, 1984, Vargas entered the emergency room at Lincoln Medical and Mental Health Center ("Lincoln") complaining of difficulty breathing. The examining physician noted that Vargas was able to walk into the emergency room, that she responded well to medication, and that Lincoln released her in "good" condition.

In September 1984, Vargas entered Lincoln's clinic for treatment of asthma. The examining physician noted that Vargas had

a history of asthma for three years and a history of diabetes for which she took no medication. On December 4, 1984, during a follow-up visit, the examining physician noted that Vargas's asthma was poorly controlled. He changed her medications and placed her on a diabetic diet and oral hypoglycemics (i.e., Diabinese) to treat her diabetes.

On May 7, 1986, Dr. G. Friedman conducted a consultative examination of Vargas. Dr. Friedman noted that Vargas took insulin as well as Diabinese to treat her diabetes. He found her physical examination normal, and her chest examination yielded normal breath sounds and only a transient anterior expiratory wheeze. Pulmonary function tests were 82 to 93 percent of the predicated values, and Vargas's blood pressure was 160/90. Dr. Friedman diagnosed Vargas as having asthma, insulin-dependent diabetes mellitus, and essential hypertension.

On July 17, 1986, Dr. Constancia Bueno–So completed a medical report stating that she had treated Vargas every 4 to 12 weeks for 15 months. Dr. Bueno–So measured Vargas's blood pressure at 120/80, found that she did not experience chest pain, and noted that there were "physically no remarkable findings."

On February 21, 1987, Dr. Pedro Pauela completed a physical capacity form stating that he had treated Vargas monthly since December 10, 1986. Dr. Pauela noted that Vargas's blood pressure was 150/80, that she had bilateral wheezing, and that an electrocardiogram ("EKG") and chest x-ray were normal. Dr. Pauela also found that Vargas was able to sit for two hours continuously and a total of six hours in an eight-hour workday, stand for one hour continuously and a total of four hours in an eight-hour workday, walk for thirty minutes continuously and a total of two hours in an eight-hour workday, and lift and carry up to ten pounds. He found, however, that Vargas should not perform activities involving unprotected heights and exposure to dust, fumes, gases, and marked changes in temperature.

Lastly, Dr. Gerald Golst, a board-certified internist and cardiologist, testified at the March 5, 1987 hearing as a medical advisor. After reviewing the evidence in the record, Dr. Golst testified that Vargas suffered from diabetes and asthma, that her pulmonary function tests were normal, that she was on "relatively minimal amounts of medication," and that there was "no documentation of any frequent emergency room visits [or] ... hospitalizations" associated with her asthma. Dr. Golst also explained that, although insulin may cause dizziness if used inappropriately or in excessive amounts, no documentation revealed hypoglycemia—the basis for dizziness. Dr. Golst concluded that Vargas is capable of performing both sedentary and light work.

Vargas applied for SSI on March 17, 1986 and upon reconsideration Vargas requested a hearing to review her claim. The ALJ held the hearing on March 5, 1987 and issued a decision on March 31, 1987. The ALJ's decision became the final decision of the Secretary when the Appeals Council denied Vargas's request for review on July 16, 1987.

*Discussion*

Under the Social Security Act, the Secretary's decision is binding on this court if it is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Havas v. Bowen,* 804 F.2d 783, 785 (2d Cir.1986). Substantial evidence means "more than a mere scintilla. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427 (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–217, 83 L.Ed. 126 (1938)).

The Secretary has established a five-step procedure for evaluating disability claims, 20 C.F.R. § 416.920, which the Second Circuit has summarized as follows:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, the Secretary next considers whether the

claimant has a "severe impairment" which significantly limited [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider [her] disabled without considered vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the Secretary then determines whether there is other work which the claimant could perform.

*Rivera v. Schweiker,* 717 F.2d 719, 722 (2d Cir.1983) (*quoting Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982)).

Vargas bears the burden of proof as to the first four steps. If she proves that she cannot return to her prior form of work, the Secretary then must consider whether work exists that she could perform. *Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 642 (2d Cir.1983). The Secretary applied this five-step procedure here and found that Vargas was not disabled within the meaning of the Act. This finding is supported by substantial evidence.

Under the first step, the Secretary correctly found that Vargas had not engaged in substantial gainful activity in the past fifteen years.

Under the second and third steps, the Secretary ruled that Vargas suffers from bronchial asthma and diabetes, but that she does not have an impairment or combination of impairments listed in, or medically equal to, a condition listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (1987). The Secretary further determined that Vargas

had the residual functional capacity to perform light work.

Substantial evidence supports these findings. Most importantly, Dr. Pauela, Vargas's current treating physician, found that plaintiff can sit for six hours in an eight-hour workday and stand and walk for a total of six hours in an eight-hour workday—the key functional demands of light work. *See* 20 C.F.R. § 416.967(b) (1987). In addition, Dr. Bueno–So, who treated Vargas from April 1985 to July 1986, noted that plaintiff exhibited "no remarkable findings" upon physical examination. In light of the "extra weight" accorded the treating physician's opinion in this Circuit, *see, e.g., Hidalgo v. Bowen,* 822 F.2d 294, 296–87 (2d Cir.1987), the Secretary's finding is supported by substantial evidence.

Pursuant to the fourth and fifth steps, the Secretary reviewed Vargas's residual functional capacity as it related to her past relevant work and the availability of other work in the national economy. 20 C.F.R. §§ 416.920(e)–(f), 416.946–416.946 and 416.-960–416.969 (1987). Because Vargas had not been employed within the past 15 years, the question was whether she could engage in any other substantial gainful activity in the national economy. 20 C.F.R. § 416.920(F) (1987).

The ALJ noted that, based upon plaintiff's vocational profile and residual functional capacity, Rule 202.16 of the Secretary's Medical–Vocational Guidelines (the "Grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2, warranted a conclusion that plaintiff is not disabled.

Where, as here, an individual has an impairment or combination of impairments resulting in both exertional and nonexertional limitations, the Medical–Vocational Guidelines are considered in determining first whether a finding of disability may be possible based upon the exertional limitations alone. If not, the guideline reflecting the individual's maximum residual strength capability, age, education and work experience, provides a framework for considering how much the individual's work capability is further diminished with respect to any types of jobs that the nonexertional limita-

tions would preclude. 20 C.F.R. part 404, Subpart P, Appendix 2, § 200.00(e) (1987).

Here, the Secretary determined that Vargas's capacity to perform the full range of light work was not significantly compromised by her nonexertional limitations (i.e., the environmental restrictions relating to plaintiff's asthma). As demonstrated by the fact that plaintiff has only one documented emergency room visit relating to her asthma, no hospitalizations, essentially normal pulmonary function tests, and minimal clinical findings, any impact her nonexertional limitations would have on the ability to work would be minimal. *See Social Security Ruling* 83–13, *reprinted in* Empl. Ins.Rep. (CCH) [New Matters] (Transfer Binder February, 1983—December, 1983) ¶ 14,534 at 1999–37 to 1999–38.

Because it is clear that plaintiff's nonexertional impairments do not significantly limit her access to jobs requiring "light" work, the ALJ properly used Rule 202.16 of the Grids as a framework and determined that plaintiff was not disabled. *See Bapp v. Bowen,* 802 F.2d 601, 606 (2d Cir.1986).

*Conclusion*

For the reasons set forth above, the Secretary's motion for judgment on the pleadings is granted and the complaint is dismissed. Because Vargas's action is without merit, her application for appointment of counsel is denied.

It is so ordered.