Paula VARGAS, Plaintiff–Appellant,

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.**

No. 325, Docket 89–6146.

United States Court of Appeals, Second Circuit.

Argued Oct. 31, 1989.

Decided March 5, 1990.

Paula Vargas, New York City, pro se.

Kathleen A. Zebrowski, Sp. Asst. U.S. Atty., S.D.N.Y., New York City (Benito Ro-mano, U.S. Atty. S.D.N.Y., Nancy Kilson, Asst. U.S. Atty., New York City, of counsel) for defendant-appellee.

Before VAN GRAAFEILAND, PIERCE and PRATT, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Paula Vargas appeals pro se from a judgment of the United States District Court for the Southern District of New York which affirmed the Secretary of Health and Human Services' denial of Supplemental Security Income to appellant. *See Vargas v. Bowen*, 712 F.Supp. 331 (S.D.N.Y.1989). We reverse and remand to the Secretary for calculation of benefits.

When Mrs. Vargas, a native of Puerto Rico, applied for Supplemental Security Income in 1986, she was forty-five years old. She was an illiterate widow who had received only a first grade education. She could speak Spanish but could not read or write it. She could neither speak nor understand English and could neither read nor write it. She had not worked for at least fifteen years, the only period considered by the Secretary in determining disability. *See* 20 C.F.R. § 416.965(a).

At the hearing before the Administrative Law Judge on March 5, 1987, Mrs. Vargas was represented by a legal assistance representative of the Bronx Legal Aid Society, whose participation in the hearing consisted primarily of the following two questions:

Q. You have been coughing through the hearing Ms. Vargas, do you feel any discomfort now?

A. Yes.

Q. Why don't you explain to us what it is your [sic] are feeling right now?

A. I don't feel very well, I feel congested. I can't breathe very well.

In response to questions asked by the A.L.J., Mrs. Vargas testified that she lived in a basement apartment in the Bronx with her son and daughter. According to Mrs. Vargas, her daughter did all the housework; Mrs. Vargas did not do the dishes, make the beds, dust, wash clothes or cook. Mrs. Vargas' daughter also helped her

dress because her back hurt and she couldn't lift her arms very much. Mrs. Vargas didn't leave the apartment except to go to the doctor and to attend church about once a month with her son. She could ride on the subway only if she had someone with her. Mrs. Vargas complained of pain in her back, chest and knees. She said she could stand for an hour but then had to lie down. She could not use her legs to push and pull. She could not bend or kneel. She could lift five to ten pounds but didn't lift anything; her son did it for her. She couldn't see well— "my eyes are dark."

Because Mrs. Vargas had no previous work experience, the issue to be determined by the A.L.J. was whether she could engage in any substantial gainful activity that existed in the national economy. 20 C.F.R. § 404.1505(a). To make this determination, the A.L.J. was required to consider Mrs. Vargas' "residual functional capacity" and her "age, education and work experience." *Id.* To assist the A.L.J. in this task, the Secretary has classified work in the national economy as "sedentary," "light," "medium," "heavy," and "very heavy." 20 C.F.R. § 416.967. We are concerned with only the first two of these classes.

A sedentary job is one which involves sitting and only an occasional amount of walking and standing. It involves lifting no more than ten pounds at a time and occasionally lifting or carrying small articles. 20 C.F.R. § 416.967(a). Light work involves a good deal of walking or standing, or, when it involves sitting most of the time, some pushing and pulling of arm or leg controls. It involves "lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds." To be considered capable of performing a full or wide range of light work, a claimant such as Mrs. Vargas "must have the ability to do substantially all of these activities." § 416.967(b); *see also* 20 C.F.R. § 404.1567(b).

To further assist the A.L.J. in determining whether a claimant such as Mrs. Vargas is disabled, the Secretary also has prepared tables which reflect the analysis of "various vocational factors (*i.e.*, age, education, and work experience) in combination with the individual's residual functional capacity" to determine what, if any, class of work the individual is capable of performing. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00; *see generally Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). Table No. 1 deals with claimants who are limited by their residual functional capacity to sedentary work. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00. Table No. 2 deals with claimants whose residual functional capacity limits them to the performance of light work. *Id.* § 202.00. If Mrs. Vargas' residual functional capacity limited her to sedentary work, she was governed by Table No. 1 and had to be found disabled as a 45–year–old unskilled illiterate. *Id.*, Rule 201.17. If her residual functional capacity permitted her to perform light work, under Table No. 2, Rule 202.16 she would not be considered disabled because she was not yet "closely approaching advanced age, 50–54." *See* § 202.00, *supra*, paragraph (d). It was in selecting the appropriate Table that the A.L.J. went awry.

At the time of Mrs. Vargas' hearing on March 5, 1987, her attending physician was Dr. Pedro Pajela, who had been treating her for the preceding three months and had "an ongoing treatment and physician-patient relationship" with her. *See Schisler v. Bowen*, 851 F.2d 43, App. A at 46 (2d Cir.1988). Dr. Pajela's opinion on the subject of Mrs. Vargas' medical disability, *i.e.*, "diagnosis and nature and degree of impairment" was binding on the A.L.J. unless contradicted by substantial evidence. *Id.* at 47. In Dr. Pajela's PHYSICIAN'S REPORT FOR CLAIM OF DISABILITY DUE TO PHYSICAL IMPAIRMENT, he described Mrs. Vargas' symptoms as follows:

> She is known to have essential hypertension since 3 years ago, diabetes mellitus since 1970 and bronchial asthma since 1972. On 2/17/86 she complained of pain in the left shoulder of 3 days duration, mild to moderate. She has been having recurrent low back pain in the past 3 years.

Dr. Pajela's diagnosis was that Mrs. Vargas had bronchial asthma, diabetes mellitus, hypertension essential, and sprains of her left shoulder and lumbo-sacro spine. The doctor's report indicated that he was prescribing medication for these several conditions which might result in palpitation, dizziness and drowsiness and that she would have to lie down for about one hour every day to relieve her low back pain.

In completing the residual functional capacity assessment portion of his report, Dr. Pajela indicated that Mrs. Vargas could sit up to two hours at a time and a total of six hours in an eight-hour day. She could stand up to one hour at a time and a total of four hours in an eight-hour workday. She could walk up to thirty minutes at a time and a total of two hours in an eight-hour workday. She could lift and could carry up to five pounds frequently, between six and ten pounds occasionally, and never more than ten pounds. She could reach occasionally but could never bend, squat, crawl or climb. Dr. Pajela concluded that Mrs. Vargas could not travel alone on the subway or a bus and should not be exposed to unprotected heights or moving machinery, to marked changes in temperature or humidity, or to dust, fumes, and gases. His prognosis was that "she needs continuing treatment." There was no substantial evidence to contradict Dr. Pajela's residual functional capacity assessment, which was fully supported by his diagnosis and prognosis.

Dr. Constancia Bueno–So, who had seen Mrs. Vargas at one to three month intervals for about a year ending on July 14, 1986, prepared a report on a New York State Department of Social Services form on July 17, 1986, in which she said, as Dr. Pajela later did, that Mrs. Vargas was suffering from diabetes mellitus and chronic bronchial asthma. From a clinical standpoint, Dr. Bueno–So stated that physically there were no remarkable findings. She offered no opinion, however, as to Mrs. Vargas' ability to work and did not make a residual functional capacity assessment.

Despite Dr. Pajela's uncontradicted residual functional capacity assessment, the A.L.J. erroneously concluded that Mrs. Vargas could "stand and walk at least six hours in an eight-hour day...." To arrive at this conclusion, the A.L.J. had to interpret Dr. Pajela's report to mean that, after Mrs. Vargas completed the four hours of standing permitted by Dr. Pajela, she could undertake an additional two hours of walking. Thus, said the A.L.J., she could "stand and walk at least six hours in a eight-hour day." This was a distortion of the attending physician's report. To walk, a person must stand; the two hours of walking must be included in the four hours of standing, not added to it.

The A.L.J. completely rejected other portions of Dr. Pajela's residual functional capacity assessment by stating that Mrs. Vargas could "lift and carry up to ten pounds about two-thirds of the workday and occasionally lift twenty pounds maximum." Dr. Pajela's report indicated that Mrs. Vargas could lift up to ten pounds "occasionally" and "never" could lift over ten pounds.

It is obvious that the A.L.J. based his conclusion on the testimony of Dr. Gerald Galst, his medical adviser, who stated his belief that Mrs. Vargas frequently could carry up to ten pounds and on occasion lift up to twenty pounds. In thus elevating the opinion of the medical adviser, who never had examined Mrs. Vargas, over that of Dr. Pajela, her treating physician, the A.L.J. violated a general rule adopted in all, or virtually all, of the circuits.

Dr. Galst's job as a medical adviser was to explain complex medical problems in terms understandable to lay examiners. *Hidalgo v. Bowen*, 822 F.2d 294, 299 (2d Cir.1987) (Van Graafeiland, J., concurring and dissenting) (citing *Richardson v. Perales*, 402 U.S. 389, 408, 91 S.Ct. 1420, 1430, 28 L.Ed.2d 842 (1971)). "The general rule is that 'the written reports of medical advisors who have not personally examined the claimant "deserve little weight in the overall evaluation of disability. The advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant." ' " *Allison v. Heckler*, 711 F.2d

145, 147–48 (10th Cir.1983) (quoting *Woodard v. Schweiker*, 668 F.2d 370, 374 (8th Cir.1981)) (quoting in turn *Landess v. Weinberger*, 490 F.2d 1187, 1190 (8th Cir. 1974)); *see also Schisler v. Bowen, supra*, 851 F.2d, App. A at 47; *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir.1982).

For some reason that the A.L.J. never saw fit to explain, he either ignored or rejected Mrs. Vargas' testimony that her daughter did all the housework and that she herself did none. The A.L.J. stated that Mrs. Vargas performed "the full range of domestic chores." The A.L.J. found it significant to mention that Mrs. Vargas came to the hearing by public transportation but apparently found no significance in the fact that she never traveled alone, and that her doctor had so ordered. Similarly, although the A.L.J. specifically recognized that Dr. Pajela's report indicated that "claimant was under his care since December, 1986 and ha[d] been diagnosed as suffering from bronchial asthma, diabetes mellitus and hypertension," he neglected to note that Dr. Pajela's diagnosis included "Sprain, Left Shoulder & L.S. Spine."

Finally, the A.L.J. stated that Mrs. Vargas "did not allege any discomfort during the course of the hearing", that "she appeared in no distress", "sat comfortably" and "answered questions spontaneously." The brief questioning by her lawyer that we have quoted above shows that Mrs. Vargas coughed throughout the hearing and testified that she did not feel very well, she felt congested and couldn't breathe very well. We find this to be substantial evidence of alleged discomfort and apparent distress. Moreover, although we customarily defer to an A.L.J.'s personal observations, we find it difficult to conceive how a witness who had to be questioned and responded through an interpreter could be described correctly as answering questions "spontaneously."

In reviewing appeals from the district court in disability cases, this Court performs its own plenary examination of the administrative record, with our focus more on the administrative ruling rather than on the district court's decision. *Havas v. Bowen*, 804 F.2d 783, 785 (2d Cir.1986). Although this process of review calls for deference to the Secretary's decision, we must remember that " '[t]he Social Security Act is a remedial statute which must be "liberally applied"; its intent is inclusion rather than exclusion.' " *Rivera v. Schweiker*, 717 F.2d 719, 723 (2d Cir.1983) (quoting *Marcus v. Califano*, 615 F.2d 23, 29 (2d Cir.1979)); *see Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir.1978). It must have been as obvious to the A.L.J. as it is to us that there was an infinitesimal likelihood that employment of any kind would be available for the sickly, uneducated, illiterate, inexperienced, 45–year–old claimant. Bearing in mind the expressed intent of the Act, we do not understand why the A.L.J. ignored or misinterpreted the report and conclusions of the attending physician, Dr. Pajela, in the grudging manner that he did. In short, we conclude that the A.L.J.'s finding of no disability was not supported by substantial evidence. Accordingly, we reverse the judgment of the district court and remand the matter to the Secretary for the calculation and payment of benefits.

## ADDENDUM

Pro se claimant's "Brief" in this Court consists of two lay letters accompanied by several medical reports that are not properly part of the record. We have not considered the letters or reports in reaching our decision. However, because they help to demonstrate the desirability of a liberal rather than a crabbed application of the Act, we mention them briefly. Among them is a report from Dr. Pajela dated December 10, 1988 in which he made substantially the same diagnosis he had made two years earlier. He concluded once again that Mrs. Vargas needed continuing treatment and stated unequivocally that she was "unable to work."

Also included are four reports from the Manhattan Eye, Ear, & Throat Hospital, which must be read together with Mrs. Vargas' letter to this Court. In the letter, dated August 8, 1989, Mrs. Vargas stated that she had been suffering from glaucoma

in her left eye for nine months; that her left eyelid had fallen and her eye was cocked; that both of her eyes had retinal damage. The reports from the Manhattan Hospital, prepared in July and August of 1989, show that a fluorescein angiography was performed on Mrs. Vargas' left eye and that she was subjected to a series of laser treatments. Fluorescein angiography is a method of investigating for diabetic retinopathy, a "serious complication of diabetes in the eye." N.R. Galloway, *Common Eye Diseases and Their Management* 223 (1985).

The Secretary suggests that an affirmance of the district court's decision would not leave Mrs. Vargas without an opportunity to have this new evidence considered by the Secretary, since Mrs. Vargas can file a new application for benefits based on a later period of disability. (Appellee's Brief at 17.) If we believed that the Secretary's decision presently before us was correct, we certainly would recommend that Mrs. Vargas follow this suggested procedure. However, based solely on the record properly before us, we have concluded that the Secretary erred in denying benefits.