Eugenio CRUZ, Plaintiff,

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant.**

**No. 93 Civ. 3455 (KTD).**

United States District Court,
S.D. New York.

April 19, 1995.

Lansner & Kubitschek, New York City, for plaintiff Eugenio Cruz (Carolyn A. Kubitschek, of counsel).

Mary Jo White, U.S. Atty., S.D.N.Y., New York City, for defendant Donna E. Shalala, Secretary of Health and Human Services (Sapna V. Raj, Asst. U.S. Atty., Annette H. Blum, Chief Counsel, Region II, and Timothy N. Tripp, Asst. Regional Counsel, Office of the Gen. Counsel, Dept. of Health and Human Services, of counsel).

### MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff Eugenio Cruz brought this action pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3) (1995) (the "Act"), challenging the decision of Defendant Donna E. Shalala, the Secretary of Health and Human Services (the "Secretary"), denying him Social Security Disability Insurance Benefits ("SSDI" benefits). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Cruz has also made a request for attorney's fees. In the alternative, Cruz moves to remand the case for a new administrative hearing.

Cruz challenges the Secretary's decision on the following grounds: (1) the decision is not supported by substantial evidence as required by § 205(g) of the Act, as amended, 42 U.S.C. § 405(g) (1995); (2) the Secretary erred in determining the date of the onset of claimant's disability; and (3) the Administrative Law Judge ("ALJ") erred by the applying the Medical–Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1994) to determine that Cruz was not disabled.

On December 15, 1986, Cruz filed an application for both SSDI and Supplemental Security Income ("SSI") benefits, claiming that he had been unable to work since November 15, 1982 due to asthma. (Tr. at 33–36). Although no action had been taken on Plain-

tiff's application for SSDI benefits, the then-Secretary of Health and Human Services, Louis W. Sullivan, denied Cruz's application for SSI benefits both initially and upon reconsideration. Thereafter, Plaintiff requested a hearing before an ALJ, who, on June 14, 1988, affirmed Secretary Sullivan's determination that Cruz was not eligible for SSI benefits. On December 27, 1988, Cruz unsuccessfully appealed the decision to the district court.

After obtaining counsel, Plaintiff appealed the decision to the Court of Appeals for the Second Circuit. On August 8, 1990, the Court of Appeals determined that the SSI benefit hearing had been inadequate, because the ALJ should have conducted more thorough investigation due to the fact that Cruz had appeared *pro se,* and accordingly remanded Cruz's case. *Cruz v. Sullivan,* 912 F.2d 8 (2d Cir.1990). At an administrative hearing held on April 3, 1991, Administrative Law Judge Heck found that Plaintiff had been "disabled" for purposes of SSI as of December 15, 1986, the date on which Cruz had filed his application for SSI benefits.

Secretary Sullivan denied Plaintiff's December 15, 1986 application for SSDI benefits. On August 8, 1991, four and one-half years after the application for SSDI benefits had been filed, Cruz requested reconsideration, relying in large part on the fact that he had recently been approved for SSI benefits. (Tr. at 37). Upon review of Cruz's file, the Secretary concluded that "a change of Title II onset prior to 12/15/86, or prior to 6/30/86, is not supported." (*Id.* at 40). Accordingly, Cruz's application for SSDI benefits was denied on the basis that Cruz was not "disabled." (*Id.* at 58–60). Cruz filed another request for reconsideration which was denied for similar reasons on December 16, 1991. (*Id.* at 49, 58–60).

On June 2, 1992, Administrative Law Judge Jonathan Jacobs considered Cruz's case *de novo.* Cruz was represented by counsel and testified through the help of a Spanish interpreter. On July 22, 1992, after the ALJ gave Cruz's attorney additional time to locate some evidence, which she was unable to accomplish, the ALJ concluded that

Cruz was "not disabled" on or before June 30, 1986, the date upon which his Social Security insurance expired. (*Id.* at 8–15). Accordingly, the ALJ held that Cruz is not entitled to SSDI benefits. (*Id.* at 15). On March 3, 1993, the decision of the ALJ became the final decision of the Secretary upon determination by the Appeals Council that there was no basis for changing the ALJ's decision. (*Id.* at 3). Cruz then brought this complaint on May 21, 1993, seeking SSDI benefits in addition to the SSI benefits he currently receives. In the present matter, Cruz claims an inability to work since November 15, 1982 due to asthma.[1]

## BACKGROUND AND MEDICAL HISTORY

Eugenio Cruz was born on September 11, 1947 in the Dominican Republic. (*Id.* at 33). Cruz has eight years of schooling (*Id.* at 11) and has a limited ability to communicate in English. (*Id.*). From 1968 to 1983, Cruz worked in a garment warehouse as a sorter and distributor. (*Id.*) Plaintiff testified that his work as a distributor required him to lift boxes weighing 55 or 60 pounds. (*Id.* at 25).

At the June 2, 1992 administrative hearing, Cruz claimed that in 1986 he had been unable to work because he suffered from asthma and lower back pain. (*Id.* at 29–31). During this period of inactivity in 1986, Cruz lived with his wife and two children. (*Id.* at 26). Plaintiff stayed at home during the day while his wife performed all the household chores. (*Id.* at 12).

Cruz testified that a doctor told him that his asthma is "emotional, or has an emotional component." (*Id.* at 29). Nevertheless, Cruz stated that odors such as gasoline, cigarette smoke, and detergents bring on an asthma attack. In addition, Plaintiff asserted that he became short of breath after climbing one flight of stairs or walking for one and one-half blocks. (*Id.* at 30). Because of Cruz's back problem, he claimed that the most he is able to lift is four pounds. (*Id.* at 30). Finally, Plaintiff claimed he smoked cigarettes through 1983, but that he has not smoked since then. (*Id.* at 12).

1. Cruz does not raise his back pain as an issue on appeal.

Cruz testified before the ALJ that his asthma began in 1983.[2] (*Id.* at 28). Although Cruz is unable to remember his initial asthma attack, he claims that the first serious one which he recalls occurred sometime in 1984. (*Id.* at 28–29). As noted by ALJ Jacobs, the record contains very little medical documentation concerning November 15, 1982, the date Cruz claims he was unable to work, through June 30, 1986, the date his Social Security insurance expired. (*Id.* at 11).

Several physicians treated Cruz from 1980 to June 12, 1992, the date of his administrative hearing before Judge Jacobs. On August 15, 1983, Dr. Fidel Larraondo treated Cruz for shortness of breath. Dr. Larraondo diagnosed Cruz as having bronchial asthma and noted that Cruz's physical examination was normal except for a few scattered wheezes.[3] (*Id.* at 71, 78, 11). Dr. Larraondo restricted Cruz from working in an environment requiring contact with detergents, chemicals or dust. (*Id.* at 78–79). In a medical report dated November 17, 1984, Dr. Larraondo diagnosed Cruz as having chronic asthmatic bronchitis. However, this report also states that Cruz is capable of working full-time in an environment lacking sudden changes in temperature and humidity, provided that Cruz is not exposed to dust, skin irritants and odors. (*Id.* at 81).

Apparently, from 1985 until early 1987, the year in which Cruz began treatment with Dr. Gheissary, Cruz's physician at the time of the June 1992 hearing, Cruz had two or three other treating physicians. However, according to Cruz's attorney, "the records of Mr. Cruz's treatment prior to December of 1986 have been either lost or destroyed." (*Id.* at 25). The only evidence of Cruz's medical condition during 1985 and 1986 is Cruz's own

testimony and the reports of Cruz's physical examination by two consulting physicians, neither of whom found that Cruz was disabled.

Cruz claims that he had been treated by a Dr. Sebastian in June of 1986 (*Id.* at 24), and by a Dr. Agura, from approximately July 1985 until the time he began seeing Dr. Gheissary in the beginning of 1987.[4] (*Id.* at 28). Both physicians were located at the Academy Medical Center. However, Cruz's medical file while under both Dr. Agura's and Dr. Sebastian's care are unavailable.[5] (*Id.* at 24). Except for Cruz's testimony, there is no other mention of Dr. Agura in the record. Cruz also failed to provide any evidence of his visits to or treatments by Dr. Aronda, the other doctor Cruz claims to have seen in 1986.

Dr. Mahmood Gheissary began treating Cruz in January 1987. On a form dated January 18, 1991, Dr. Gheissary diagnosed Cruz with asthma and arthritis. Dr. Gheissary opined that in an eight-hour workday, Cruz could lift five-pound materials for approximately three to five hours and six to 10 pounds for one to three hours; bend, climb, and carry up to ten pounds for about three hours; sit upright for approximately one hour; stand for a maximum of two hours; and walk for a total of 30 minutes. Furthermore, Dr. Gheissary found that work on a regular and continuous basis would cause Cruz's medical condition to deteriorate. (*Id.* at 87). On a medical evaluation form dated January 17, 1991, Dr. Gheissary concluded that Cruz's condition not only prevented him from returning to his previous work in the garment warehouse, but that Cruz was unable to engage in any work on a sustained, full-time basis. (*Id.* at 88).

---

**2.** In a deposition taken on September 11, 1992, Plaintiff claims that his first asthma attack occurred "about 1980." (Tr. at 94).

**3.** Because most of the writing on Dr. Larraondo's Progress Note is illegible, I am also relying on the ALJ's report of Plaintiff's medical history.

**4.** This time period reference is based on Cruz's testimony. Cruz testified that Dr. Agura treated him for "about a year and a half" immediately prior to Dr. Gheissary.

**5.** It is asserted that the medical files facilitator at the Academy Medical Center during the period that Dr. Sebastian treated Cruz retired and took the files with him. Dr. Sebastian, who no longer works at the center, stated that without access to the medical files, he is not able to write medical reports on prior patients because he has no recollection of patients from 1986. The whereabouts of the facilitator are unknown. (*See* Bensow Dep. Tr. at 91–93).

In order to assist in the re-evaluation of Cruz's application for SSDI benefits, in a letter dated June 2, 1992, ALJ Jacobs personally requested that Dr. Gheissary provide a detailed account of Cruz's condition from the time that he began treating Cruz. Judge Jacobs specifically requested that Dr. Gheissary provide him with "objective findings, clinical signs, reports of tests, x-rays and all procedures performed" on Cruz, as well as copies of all treatment notes. (*Id.* at 89).[6] However, the record does not contain any of the requested information except what is listed in the two medical documents previously mentioned, both completed in 1991.

In addition, as the ALJ noted, between November 15, 1982 and June 30, 1986, there is no evidence of Cruz requiring hospitalization or emergency room treatment. (*Id.* at 11).

## DISCUSSION

To qualify for disability benefits, the claimant has the burden of proving that he is "disabled" within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5); *Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 642 (2d Cir.1983). The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or medical impairment which can be expected to result in death or which has lasted for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" means work activity, done for pay or profit, involving significant physical or mental activities. 20 C.F.R. § 404.1572.

There is a five-step procedure that the Secretary must follow when evaluating disability claims:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). *See also* 20 C.F.R. § 404.1520 (1994).

■ Once the claimant establishes a *prima facie* case by proving that his impairment prevents him from performing his past work, the Secretary then has the burden of proving that the claimant retains the residual functional capacity "to perform alternative substantial gainful employment that exists in the national economy." *White v. Secretary of Health and Human Services,* 910 F.2d 64, 65 (2d Cir.1990); *Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986) (citing *Berry,* 675 F.2d at 467; *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980)). When determining whether the claimant is able to engage in substantial gainful activity, the ALJ must consider "objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence of pain or disability testified to by the claimant or other witnesses, and the claimant's educational background, age, and work experience." *Parker v. Harris,* 626 F.2d at 231.

■ Provided that Secretary Shalala has applied the correct legal standards, her finding that Plaintiff has failed to prove disability

---

6. Judge Jacobs requested this medical documentation despite the fact that Cruz was represented by counsel at the June 2, 1992 hearing.

is conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Parker v. Harris,* 626 F.2d at 231. It is not the function of the reviewing court to determine *de novo* whether the claimant is disabled. *Parker v. Harris,* 626 F.2d at 231. Rather, the scope of review is limited to evaluating whether there is substantial evidence in the record to support the Secretary's decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991); *Alston v. Sullivan,* 904 F.2d 122, 126 (2d Cir.1990); *Kendrick v. Sullivan,* 784 F.Supp. 94, 106 (S.D.N.Y.1992). If the court finds that substantial evidence supports the Secretary's determination, the Secretary's decision must be upheld. *Schauer v. Schweiker,* 675 F.2d 55, 57 (2d Cir.1982). Substantial evidence is defined as " 'more than a mere scintilla' ", it is " 'such relevant evidence as a reasonable mind might accept as adequate to support to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

Although the Secretary correctly applied the five-step procedure in evaluating Cruz's disability claim, Cruz disputes the Secretary's determination regarding step five, namely that Cruz remained capable of performing other work. To determine whether Cruz could perform other work, the ALJ was required to consider Plaintiff's "residual functional capacity" and his "age, education, and work experience." 20 C.F.R. §§ 404.1505(a), 404.1560(c); *Vargas v. Sullivan,* 898 F.2d 293, 294 (2d Cir.1990); *Kendrick v. Sullivan,* 784 F.Supp. at 107. To assist the ALJ, the regulations classify jobs in the national economy as "sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 416.968.

After evaluating the limited amount of medical evidence available, ALJ Jacobs found that although Cruz was not capable of performing his past relevant work as a garment warehouse sorter and distributor, Cruz had the "residual functional capacity to perform the physical exertion and nonexertional requirements of work except for lifting more than 20 pounds." (Tr. at 14). Therefore, ALJ Jacobs found that Cruz had the residual functional capacity for the full range of light work,[7] "reduced by his inability to be exposed to high concentrations of irritants." (*Id.* at 14). Based on Cruz's exertional capacity for light work, and his age, education, and work experience, the ALJ concluded that the Medical–Vocational Guidelines (the "Grids") direct a finding of "not disabled." 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2. The ALJ, therefore, held that the claimant was not under a disability at any time during the period in question.

■ Cruz argues that the ALJ's determination that he is capable of performing light work is not supported by substantial evidence. However, the Secretary's finding that the claimant is not disabled must be upheld if such a finding is supported by substantial evidence in the record taken as a whole. *Alston,* 904 F.2d at 126 (citing *State of New York v. Secretary of Health and Human Services,* 903 F.2d 122 (2d Cir.1990)). As noted by the ALJ, the record does not contain any documentation of medical treatment during 1985 and 1986. (Tr. at 12).

■ Cruz argues that ALJ Jacobs was bound by Dr. Gheissary's report of Cruz's disability prior to December 1986, because that doctor was the treating physician. But, a treating physician's opinion will be given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Schisler v. Sullivan,* 3 F.3d 563, 567 (2d Cir.1993) (quoting 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).[8]

---

**7.** "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds ... a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

**8.** Although the Second Circuit has previously followed the "treating physicians rule," the Second Circuit has approved 20 C.F.R. § 404.1527(d)(2) which differs from the former. *See Schisler v. Sullivan, supra.*

Here Dr. Gheissary was not the "treating physician" during the period in question. The record does not contain any medical documentation from Cruz's treating physicians in 1985 and 1986. Dr. Gheissary did not begin treating Cruz until 1987, and his evaluation of Cruz's abilities was made in 1991. Prior to 1985, however, Cruz's then treating physician opined that Cruz was capable of working full-time but was limited to work activity in an environment which does not require exposure to dust, chemicals and detergents. (Tr. at 12, 81). Furthermore, as far as medically accepted diagnostic techniques, the only evidence near to the time in question was a physical examination performed in August 1986 at the request of the Welfare Department, the results of which were normal except for wheezing of the lungs.[9] Therefore, because the record contains substantial evidence contradicting Dr. Gheissary's opinion, ALJ Jacobs did not err by not giving Dr. Gheissary's January 18, 1991 report controlling weight.

The only person to testify at the June 2, 1992 hearing was Cruz. ALJ Jacobs properly gave consideration to Cruz's subjective complaints, pursuant to Social Security Ruling ("SSR") 88-13, but found that "the level of respiratory distress and pain alleged by the claimant as constant and totally disabling" was not credible. Although the Plaintiff argues that his subjective testimony should have been given great weight, "[a]n individual's statement as to pain or other symptoms shall not be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). Instead, an individual's subjective statement of pain should be considered along with objective medical evidence of pain. *Id.* Furthermore, "[t]he ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of the medical findings and other evidence," regarding the extent of the disability alleged by the claimant. *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979). In response to ALJ Jacobs' questions to Cruz about the quality of his life from 1984 to 1986, Cruz admitted that he was unable to remember any details. (Tr. at 27–28) Not only did the ALJ find that Cruz's testimony was vague, but that "the level of respiratory distress and pain alleged by the claimant as constant and totally disabling is not supported by objective clinical findings, not commensurate with the intensity or frequency of treatment received and not found credible." (*Id.* at 12).

Plaintiff's last argument is that the ALJ erred by using the grids in determining that he is not disabled. The grids cross-reference an individual's residual functional capacity in conjunction with vocational factors such as age, education and experience to help the ALJ determine what kind of work an individual can perform. ALJ Jacobs found that Cruz retained the residual functional capacity to work in an environment free of fumes, detergents, and other odors. Having made this determination, the ALJ relied upon the grids to assist in his determination that Cruz is not disabled. Furthermore, the ALJ noted that Cruz's non-exertional afflictions do not prevent him from performing a large number of "light weight" jobs. Therefore, ALJ Jacobs was not required to hear expert vocational testimony before concluding that Cruz is not disabled because Cruz's non-exertional impairments do not "significantly limit the range of work permitted by his exertional limitations." *Bapp,* 802 F.2d at 605 (quoting *Blacknall v. Heckler,* 721 F.2d 1179, 1181 (9th Cir.1983) (per curiam)).

The ALJ's determination affirming the Secretary's decision that Cruz was not disabled is supported by substantial evidence. Plaintiff's motion for judgment on the pleadings is denied. Defendant's motion for judgment on the pleadings is hereby granted.

SO ORDERED.

---

**9.** Claimant argues that the ALJ erred in relying on the report by the Welfare Department because it does not exist in the record. However, just because a copy of the report is not in the record does not necessarily mean that ALJ Jacobs did not see it.