In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3314

ANTHONY KAMINSKI,

*Plaintiff-Appellant,*

*v.*

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 16-CV-514 — **Jon E. DeGuilio**, *Judge.*

ARGUED APRIL 25, 2018 — DECIDED JULY 9, 2018

Before MANION, HAMILTON, AND BARRETT, *Circuit Judges.*

HAMILTON, *Circuit Judge.* In 2000, Anthony Kaminski fell
down a flight of stairs, suffering a head wound that caused a
traumatic brain injury and a seizure disorder. Thirteen years
later, he applied under the Social Security Act for disability
insurance benefits and supplemental security income. The So-
cial Security Administration denied his applications, and the
district court upheld the denial. Kaminski appeals, arguing

that the administrative law judge improperly rejected his treating physician's opinions. We agree with Kaminski. Because the treating physician's opinions and the testimony of the vocational expert together show that Kaminski is disabled, we remand the case to the agency with instructions to award benefits to Kaminski.

I.  *Background*

After Kaminski's fall in 2000, doctors determined that he had suffered a seizure, was experiencing an intracerebral hematoma (bleeding in his brain), and had fractured his left jawbone. They reported that, as a result of the fall, Kaminski had severe cognitive deficits—including problems with memory and a change in personality—and an inability to understand the severity of his injury.

Kaminski began regularly seeing a neurologist, Dr. Richard Cristea, who monitored his seizure disorder and prescribed him an anticonvulsant. Over the ensuing years, Kaminski, while under Dr. Cristea's care, suffered at least four seizures—in 2007, 2008, 2013, and 2014.

Kaminski applied in 2013 for disability benefits, alleging that he became disabled on the date of his fall. His strongest evidence of disability consisted of a residual functional capacity form and medical-source statements that Dr. Cristea submitted in the summer of 2013.

Dr. Cristea reported that brain atrophy and asymmetry shown by a 2013 MRI were consistent with the traumatic brain injury that Kaminski suffered in 2000. Dr. Cristea noted that Kaminski had "frequent falls" and opined that seizures could be triggered by physical activity, stress, inadequate

sleep, and dehydration, so Kaminski was incapable of performing even low-stress work. The seizures often caused Kaminski to be confused, irritable, and fatigued, and they impaired his coordination, his level of alertness, and his awareness of his surroundings. And Kaminski's brain damage, Dr. Cristea wrote, impeded his ability to organize thoughts (especially when listening to someone speak), as well as to understand what he saw or heard, and it "changed" his behavior and personality. According to Dr. Cristea, Kaminski was "totally disabled," and it was "unsafe [for him] to work in any capacity."

In connection with Kaminski's application, a state-agency physician and a state-agency psychologist examined him in the spring of 2013. Much of the physical exam was normal, with the physician recording that Kaminski reported no feelings of weakness, dizziness, or memory loss. He displayed a stable mood and was able to show appropriate insight and judgment. The psychological examination, however, noted Kaminski's poor hygiene; memory lapses and poor math skills; an inability to interpret proverbs; and his bouts of depression, moodiness, and anger. On the other hand, two consultants for the state agency reviewed Kaminski's file without actually examining him. They opined that he could do semi-skilled medium work with some restrictions.

After the Social Security Administration denied Kaminski's claims, an administrative law judge held a hearing at which Kaminski and his sister testified. Before his accident, Kaminski had worked as a carpenter. When the judge asked him why he could not work, he answered, "Because of my seizures and me falling down and I get dizzy and I really can't

… be around people, too many people because I get frustrated. I'll get aggravated and I'll blow up with them." Kaminski testified that he lived alone, and that the possibility of a seizure prevented him from doing most activities. He could not drive, and his friends helped him shop and clean his house. Kaminski's sister testified about his change in personality since the accident. Before, he had been "very independent," but he had become unfocused, unclean, and verbally abusive, and did not tolerate criticism or take direction.

A vocational expert also testified about Kaminski's employment prospects. The judge asked whether work was available for a person with Kaminski's age, education, and experience, with a residual functional capacity for medium work, appropriate physical limitations, and a number of other limitations related to his mental status: limited to hearing and understanding only simple oral instructions; limited to performing simple, routine, and repetitive tasks (but not at production-rate pace); limited to simple work-related decisions in dealing with changes in the work setting; and limited to having to respond appropriately only occasionally to co-workers and the public.

The expert said that such a person would be unable to do Kaminski's past carpentry work but could work as a general helper, laundry laborer, or dryer attendant. But if limits were added consistent with Dr. Cristea's opinions, so that the person would be either off task 20 percent of the workday, unable to accept instructions or to respond to supervisors appropriately, or both, the person could not do any full-time jobs.

The administrative law judge denied benefits using the familiar five-step framework. See 20 C.F.R. §§ 404.1520(a),

416.920(a). The judge determined that Kaminski had not en-
gaged in substantial gainful activity since September 19, 2000
(Step 1); he suffered from a seizure disorder and an organic
mental disorder, both severe (Step 2); but his impairments, in-
dividually or in combination, did not satisfy a listing for pre-
sumptive disability (Step 3).

The judge then concluded that Kaminski could not per-
form his past work (Step 4), but that there were jobs available
in the national economy that Kaminski could perform, as
identified by the expert (Step 5). When determining Kamin-
ski's residual functional capacity, the judge rejected Kamin-
ski's account of disabling limitations. The judge acknowl-
edged that Kaminski's impairments "could reasonably be ex-
pected to cause the alleged symptoms," but the judge did not
accept Kaminski's statements about the extent that the symp-
toms limited him. The judge believed that Kaminski's seizure
disorder was well controlled, that his mental limitations were
not as severe as reported, and that Dr. Cristea's opinions about
Kaminski's functionality were inconsistent with the doctor's
own treatment notes as well as Kaminski's testimony. The
judge gave Dr. Cristea's opinion "little evidentiary weight,"
while giving substantial weight to the consulting (i.e., non-ex-
amining) doctors' reports.

The Appeals Council summarily denied review, and the
district court upheld the agency's denial of benefits.

II. *Analysis*

On appeal Kaminski focuses on the administrative law
judge's decision to discount the medical opinions of his treat-
ing physician, Dr. Cristea. Under the "treating physician rule"

that applies to Kaminiski's claim, a judge should give control-
ling weight to the treating physician's opinion as long as it is
supported by medical findings and consistent with substan-
tial evidence in the record. See 20 C.F.R. § 404.1527(c)(2);
*Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018).[1] Kamin-
ski argues that the administrative law judge erred by dis-
counting Dr. Cristea's opinions, and did so by (1) misconstru-
ing Kaminski's own statements as inconsistent with Dr.
Cristea's opinions when they actually were symptomatic of
his frontal-lobe injury, (2) not apprehending that the physical
limits Dr. Cristea imposed aimed to prevent seizures, and (3)
cherry-picking evidence and "playing doctor."

We agree with Kaminski that the judge improperly dis-
counted Dr. Cristea's opinion in each of these ways. First,
Dr. Cristea's findings about Kaminski's limitations were con-
sistent with Kaminski's statements that he did not have
memory loss, problems with concentration, or mood and per-
sonality changes. In fact, these statements actually corrobo-
rate Dr. Cristea's opinion that Kaminski was significantly lim-
ited *yet did not recognize his limitations*.

Kaminski suffered a left frontal-lobe injury that is con-
firmed by extensive medical evidence. A paradoxical effect of
the injury is that it made him unable to understand the mag-
nitude of his impairments. His denials of impairments and
limits were in fact some of the symptoms of the serious brain
injury that he suffered. Other so-called inconsistencies the

---

[1] The treating-physician rule has been modified to eliminate the "con-
trolling weight" instruction for newer claims, but the old rule still applies
to Kaminski's claim. Compare 20 C.F.R. § 404.1527 (for claims filed before
March 27, 2017), with 20 C.F.R. § 404.1520c (for claims filed on or after
March 27, 2017).

judge seized upon, like Kaminski's denials of fatigue in regular doctor visits, also were consistent with Dr. Cristea's opinions. Dr. Cristea reported that Kaminski felt fatigued after a seizure, and in hospital records from visits immediately after seizures, Kaminski reported fatigue.

Next, the judge misunderstood that Dr. Cristea placed physical limits on Kaminski only to prevent seizures. On his residual functional capacity form, the doctor described activities that Kaminski *should* avoid—i.e., reaching, handling objects, bending, squatting, and kneeling. The judge misinterpreted the report to say that Kaminski was not physically capable of these activities, when he actually can perform them, but at dangerously increased risk of seizures. The mistake led the judge to make too much of an apparent inconsistency with Kaminski's ability to perform the prohibited activities at his state-agency physical examination. This was error. Where a judge rejects a treating physician's opinion because it does not align with the judge's own "incorrect interpretation of the medical evidence," that decision is not supported by substantial evidence. *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016).

The judge also impermissibly cherry-picked evidence. See *Gerstner*, 879 F.3d at 261–63; *Cole v. Colvin*, 831 F.3d 411, 416 (7th Cir. 2016). Specifically, the judge appears to have overlooked the consulting psychologist's report that Kaminski had diminished cognitive abilities, yet relied heavily on the reports of doctors who did not examine Kaminski but who opined that he could work with some restrictions.

The judge also erred when he relied on his own interpretation of Kaminski's MRI instead of Dr. Cristea's. "ALJs are required to rely on expert opinions instead of determining the

significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014); see *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (remanding denial of benefits where ALJ "played doctor"). In this case the judge concluded from Kaminski's MRI in 2013 that his brain abnormalities were not disabling. The relevant expert on this issue is not the judge but Dr. Cristea, the neurologist who had treated Kaminski for years. Dr. Cristea explained that the MRI's results showed conditions—generalized atrophy, ischemic disease, and scarring in the left temporal lobe—consistent with a seizure disorder and cognitive limits. The judge supported his conclusion primarily by crediting Kaminski's own, more positive views about his abilities. As explained above, Kaminski's mistaken views of his own abilities are actually symptomatic of his frontal-lobe injury. They do not provide a sound basis for discounting Dr. Cristea's opinions.

In addition to assessing the contents of Dr. Cristea's opinions, it was incumbent on the judge to "determine what weight his opinion was due under the applicable regulations." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010), citing 20 C.F.R. § 404.1527(d)(2). "An ALJ must consider the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Id.*

All of these factors support Dr. Cristea's expertise: He treated Kaminski regularly over many years after his 2000 accident and frontal-lobe injury; he is a neurologist; and contrary to the judge's findings, his opinion is consistent with the other evidence in the record. Besides saying he was assigning

Dr. Cristea's opinions "little evidentiary weight," the judge did not address any of these factors.

The administrative law judge's failure to give controlling weight to Dr. Cristea's opinions was an error requiring remand. When a reviewing court remands to the Appeals Council, the ordinary remedy is a new hearing before an administrative law judge. In unusual cases, however, where the relevant factual issues have been resolved and the record requires a finding of disability, a court may order an award of benefits. E.g., *Larson*, 615 F.3d at 749 (awarding benefits); *Maresh v. Barnhart*, 438 F.3d 897, 901 (7th Cir. 2006) (awarding benefits where evidence showed that listing was met); *Hickman v. Apfel*, 187 F.3d 683, 690 (7th Cir. 1999) (same); *Wilder v. Chater*, 153 F.3d 799, 804 (7th Cir. 1998) (evidence required finding of disability); *Micus v. Bowen*, 979 F.2d 602, 609 (7th Cir. 1992) (awarding benefits); *Vargas v. Sullivan,* 898 F.2d 293, 296 (2d Cir. 1990) (awarding benefits where ALJ had "ignored or misinterpreted" treating physician's opinions); *Woody v. Secretary*, 859 F.2d 1156, 1162–63 (3d Cir. 1988) (awarding benefits where no evidence rebutted case for disability); *King v. Barnhart*, 2007 WL 968746, at *7 (S.D. Ind. Feb. 26, 2007) (awarding benefits where findings showed that listing was met).

This is one of those unusual cases. The judge found that the five-step analysis of a disability claim had to proceed to the fifth step. At the fifth step, the burden of proof and persuasion is on the agency. To deny benefits, the agency must show that even though the claimant could no longer perform his past relevant work, he was capable of performing some other work in the national economy. See 20 C.F.R. § 404.1520(g); *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir.

2008); *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004)**;** *Herron v. Shalala*, 19 F.3d 329, 333 n.8 (7th Cir. 1994); *Stiles v. Berryhill*, 242 F. Supp. 3d 773, 777 (S.D. Ind. 2017).

The agency did not meet that burden here. Once the treating physician's opinions are given the proper weight, the record compels the conclusion that Kaminski was unable to work and thus was disabled under the relevant statutes and regulations. 20 C.F.R. § 404.1520(a)(4)(v); see also *Larson*, 615 F.3d at 749; *Vargas*, 898 F.2d at 296. We base this conclusion primarily on the combination of Dr. Cristea's opinions and the testimony of the vocational expert. The vocational expert testified that a person with the limits that Dr. Cristea had ascribed to Kaminski simply would not be able to sustain full-time employment. There is no sound basis in the record to dispute that opinion. Thus, "all factual issues involved in the entitlement determination have been resolved and the resulting record supports" the conclusion "that the applicant qualifies for disability benefits." *Allord v. Astrue,* 631 F.3d 411, 415 (7th Cir. 2011) (summarizing standard but then remanding for further hearing where record did not compel finding of disability).

We REVERSE the judgment of the district court, and REMAND the case to the agency with the instruction to calculate and award benefits to Mr. Kaminski.