Antonia PAGAN on Behalf of Reimundo PAGAN, Plaintiff,

v.

Shirley S. CHATER, Commissioner of Social Security, Defendant.

No. 94 Civ. 4811 (WCC).

United States District Court, S.D. New York.

April 24, 1996.

Bronx Legal Services, Bronx, New York (Tanya Marie Douglas, of Counsel), for plaintiff.

Mary Jo White, United States Attorney for the Southern District, New York City (Susan D. Baird, Asst. United States Attorney, of Counsel), for defendant.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Plaintiff Antonia Pagan ("Antonia") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) on behalf of her son Reimundo Pagan ("Reimundo"), a minor child, seeking jurisdictional review of the final decision of the Commissioner of Social Security (the "Commissioner") which denied plaintiff's application for supplemental Security Income ("SSI") disability benefits.[1] Both parties have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For reasons discussed below, we remand this case for further proceedings consistent with this opinion.

### BACKGROUND

Antonia, on behalf of Reimundo, filed applications for SSI on February 25, 1988 (the "1988 Application") and May 15, 1990 (the "1990 Application"). Tr. 61–64, 65–68.[2] Plaintiff avers that the 1988 Application was

---

1. By Public Law No. 103–296, § 106(d) of the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

2. "Tr." refers to the transcript of the administrative record filed by the Commissioner as part of her Answer.

denied, although the record does not contain a copy of the denial notice. The 1990 Application was denied initially and on reconsideration. Tr. 70–72, 73–74, 76–77. The 1990 Application subsequently was re-adjudicated under new standards for evaluating disabled child's SSI claims, pursuant to *Sullivan v. Zebley,* 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990), and was again denied initially and on reconsideration. Tr. 82–85, 86–87, 89–91. Plaintiff requested a hearing (the "Hearing") which was held on August 25, 1993 before Administrative Law Judge ("ALJ") Thomas P. Dorsey. *See* Tr. 31–60. Reimundo and his mother Antonia appeared and testified, and they were represented by a legal assistant.[3] On October 13, 1993, ALJ Dorsey issued a decision finding that Reimundo was not under a disability. *See* Tr. 17–28. In addition, ALJ Dorsey decided not to re-open the 1988 Application for disability benefits. Tr. 21. The decision of the ALJ became the final decision of the Commissioner when the Appeals Council denied the request for review on May 3, 1994. *See* Tr. 5–6.

## STANDARD OF REVIEW

In reviewing the denial of SSI benefits, this Court is limited to an assessment of the Commissioner's general treatment of the administrative record. *Wagner v. Secretary of Health and Human Services,* 906 F.2d 856, 860 (2d Cir.1990). The Act provides that the "findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence in this context has been defined as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996).

We must keep in mind that the Social Security Act is a remedial statute which must be "liberally applied." *Vargas v. Sullivan,* 898 F.2d 293, 296 (2d Cir.1990) (citations omitted). "[I]ts intent is inclusion rather than exclusion." *Id.* (citations omitted).

## MEDICAL HISTORY

Reimundo was born on November 23, 1978 in Puerto Rico, and, at the age of two, was diagnosed with a congenital heart disease. Tr. 257–58. Subsequent evaluations conducted at the Cardiology Clinic of Montefiore Medical Center in New York confirmed that Reimundo suffered a heart impairment, namely aortic stenosis. Tr. 213–14. In 1988 Reimundo underwent cardiac catheterization and balloon valvuloplasty in order to treat his aortic stenosis, with minimal success. Tr. 192, 257. Complications arose during the procedure from thrombosis in his femoral artery, necessitating bypass surgery and the insertion of an artificial graft. Tr. 192, 249, 257. The final diagnosis was mild to moderate aortic stenosis and unsuccessful balloon angioplasty. Tr. 212, 213–16. Reimundo was diagnosed also with poor circulation in the legs (vaso-occlusive disease) due to aortic stenosis and femoral artery bypass. Tr. 257–58.

Then in or about 1989, Reimundo was diagnosed with asthma. *See* Tr. 205, 253, 257. In January 1993, Reimundo was hospitalized for five days due to his asthmatic condition. Tr. 43. Since that time, his asthma has not caused him to be hospitalized or to seek emergency treatment. *Id.* Reimundo's asthma is controlled by medication administered by a ventolin inhaler. *See* Tr. 44–45, 253, 257.

Reimundo has been receiving treatment at a clinic located at 113 East 183rd Street in Bronx regularly since February 24, 1986. *See* Tr. 253. His treating physician at the clinic, Dr. Guillaume, noted that Reimundo had a history of heart disease and was taking asthma medication. *Id.* In addition, Reim-

---

**3.** The Transcript identifies the plaintiff's representative as an attorney, but the appointment of representative form indicates that the representative was a legal assistant. Tr. 33, 29. ALJ Dorsey noted that plaintiff proceeded without legal representation. *See* Tr. 20 ("After being fully advised of the right to representation, the claimant's mother elected to proceed without representation.").

undo has been receiving treatment at the Montefiore Children's Cardiac Clinic under the supervision of Dr. Veith, Chief of Vascular Surgery at Montefiore, and Dr. Eisenberg, Director of the Pediatric Catheterization Laboratory at Montefiore, every three to six months since May 1988. Tr. 192, 213, 240–41, 247–48, 286.

Reimundo has poor circulation in his legs due to his heart impairment and as a result of the femoral artery bypass. Tr. 258. Dr. Veith's diagnosis indicates that Reimundo suffers mobility impairments due to his limited blood supply to the left lower extremity, a residual effect of the vaso-occlusive disease. Tr. 286. Reimundo often experiences pain in his left leg; he has trouble walking up stairs, and does not participate in gym class or play during recess. Tr. 38–41, 108, 111, 192, 286, 290. He has to take breaks while walking up the stairs to his second floor apartment, and he leaves the apartment only to go to school or see the doctor. Tr. 39, 40.

Because of Reimundo's medical condition, he was unable to attend Kindergarten, and, in 1985, began schooling in the first grade at the age of six. Reimundo was left back in first grade, but has kept up since that time. Tr. 36, 46. Reimundo has missed up to 31 days during the school year due to frequent doctors' appointments, and because he was receiving home instruction until he could be transferred to a school that would not require him to walk up five flights of stairs to his homeroom. Tr. 51, 162–64, 175.[4] Reimundo gets along very well with his two older brothers, who were living at home until 1992 and 1993, respectively, and with his cousin who was staying with the Pagans, and with his friends. Tr. 46–47.

## DISCUSSION

The SSI program is a federal program that provides benefits to needy, aged, blind or disabled individuals who meet the statutory income and resources limitations. 42 U.S.C. §§ 1382–1382d. For purposes of the SSI program, an individual shall be considered disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment...." 42 U.S.C. § 1382c(a)(3)(A). In the case of a child under the age of 18, the child is deemed to be disabled if he suffers from any medically determinable physical or mental impairment of "comparable severity" to the impairments which would render an adult disabled. *Id.* "Comparable severity" for a child means that the impairment so limits the child's ability to function independently, appropriately, and effectively in an age-appropriate manner that the impairment and the limitations resulting from it are comparable to those which would disable an adult. 20 C.F.R. § 416.924(a). For a child such as Reimundo between 3 and 16 years of age, the comparability of disability is measured primarily by whether the impairment substantially reduces the child's ability to "[g]row, develop, or mature physically, mentally, or emotionally and, thus, to engage in age-appropriate activities of daily living ... in self-care, play and recreation, school and academics, community activities, vocational settings, peer relationships, or family life." 20 C.F.R. § 416.924(a)(2).

The Commissioner has promulgated a four-step sequential analysis for evaluating whether a childhood disability exists. *See* 20 C.F.R. § 416.924(b). First, the Commissioner considers whether the child is currently engaging in substantial gainful activity. 20 C.F.R. § 416.924(b). If he is, the child will be found to be not disabled. 20 C.F.R. § 416.924(c). Second, if he is not engaging in substantial gainful activity, the Commissioner next considers whether the child has an impairment or combination of impairments that is severe. 20 C.F.R. § 416.924(b). If the child does not have a severe impairment, the Commissioner will determine that he is not disabled. 20 C.F.R. § 416.924(d). Third, if he does have a severe impairment, the Commissioner then consid-

---

4. Reimundo missed 31 days during the 1989/1990 school year (fifth grade). Tr. 175. Reimundo was receiving home education from the spring of 1990 through the first semester of the next school year. Tr. 167. After returning to school in the second semester of the 1990/1991 school year (sixth grade), Reimundo missed 30 out of 75 school days. Tr. 175. Reimundo missed 17 days during the 1991/1992 school year (seventh grade). Tr. 162. Antonia testified that Reimundo missed about 30 days during the 1992/1993 school year (eighth grade). Tr. 51.

ers whether he has an impairment which meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). If the criteria are met, the Commissioner will find the child disabled. 20 C.F.R. § 416.924(e). Fourth, if the child does not have a listed impairment, the evaluation proceeds to the final step, and the Commissioner will conduct an individualized functional assessment ("IFA"). 20 C.F.R. § 416.924(f). In conducting an IFA, the Commissioner will assess the impact of the impairments on the child's overall ability to function independently, appropriately, and effectively in an age-appropriate manner. *Id.* This analysis will determine whether the child has an impairment of comparable severity to an impairment that would disable an adult. *Id.*

An IFA evaluates children in terms of six so-called domains: (1) cognitive, (2) communicative, (3) motor, (4) social, (5) personal/behavioral, and (6) concentration, persistence and pace. 20 C.F.R. § 416.924d(h)(1)–(6). Age is also a factor when considering the functional assessment of a child. 20 C.F.R. § 416.924a(a).

Generally, the Commissioner will find a child disabled if he has a "marked" limitation in one of six domains, and a "moderate" limitation in a second domain, or if he has a "moderate" limitation in three of six domains. 20 C.F.R. § 416.924e(c)(2). A "marked" impairment is one that is "more than moderate but less than extreme" where "the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 416.924e(c)(2) (incorporating by reference the definition of marked impairment at 20 C.F.R. pt. 404, subpt. P, app. 1, 112.00C). A "moderate" impairment is one that is not as severe as a "marked" impairment. *Id.*

In this case, the ALJ determined that (1) Reimundo was not engaged in substantial gainful activity; (2) he had the following severe impairments: bronchial asthma, vaso-occlusive disease with secondary impairment of motor function of the left leg, and aortic stenosis; but (3) the impairments were not of

listing severity. Tr. 27. The ALJ then conducted an IFA. Tr. 27–28. The ALJ concluded that there was no limit in Reimundo's cognitive, communicative, social or personal/behavior functions, and that Reimundo had only a moderate limitation in motor function. Tr. 26, 28. He found also that there was no evidence of limitation in the area of "concentration, persistence and pace." Tr. 26. The ALJ thus concluded that Reimundo does not have an impairment comparable to one which would disable an adult. Tr. 28.

The parties agree that the ALJ conducted the first two steps of the sequential analysis without error. However, plaintiff argues that the ALJ improperly failed to find that Reimundo's asthma was of listing severity (step three), and conducted an improper IFA (step four) by failing to accord proper weight to the treating physician's diagnosis. Furthermore, plaintiff argues that the ALJ applied the incorrect legal standard in deciding not to reopen plaintiff's 1988 Application.

## I. The Listings

Plaintiff argues that the ALJ failed to find that Reimundo's asthma qualifies under the Listings because he failed to develop the record with respect to Reimundo's asthma medication. *See* Pl.'s Mem. of Law in Support of Pl.'s Motion for Judgment on the Pleadings, at 27–28 ("Pl.'s Mem."). Plaintiff argues that the disability record documents that Reimundo's prescribed course of treatment for bronchial asthma included the use of corticosteroids and bronchodilators. Pl.'s Mem., at 27. According to plaintiff, if the ALJ had inquired about the use of the steroid, Prednisone, a type of corticosteroid, the ALJ "could have obtained proof such as the enclosed pharmacy list" attached as an exhibit to plaintiff's memorandum. Pl.'s Mem., at 27. Plaintiff then argues that "this pharmacy print-out reveals that the claimant's respiratory disorder satisfied the criteria of Listing 103.03 C.2." Pl.'s Mem., at 28. The criteria of this listing are as follows:

Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with ... [s]hort courses of

corticosteroids that average more than 5 days per month for at least 3 months during a 12–month period.

20 C.F.R. pt. 404, subpt. P, app. 1, 103.03C. Plaintiff argues that the ALJ failed to inquire about the frequency of Reimundo's use of steroids, implying that if the ALJ had made such inquiries, he would have concluded that Reimundo had been taking steroids often enough to render him "disabled" under the Listings.

▇▇▇ In deciding whether the ALJ's conclusions are supported by substantial evidence, the Court must first satisfy itself that " 'the claimant has had "a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." ' " *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir.1990) (quoting *Echevarria v. Secretary of Health and Human Services*, 685 F.2d 751, 755 (2d Cir.1982); *Gold v. Secretary of HEW*, 463 F.2d 38, 43 (2d Cir.1972)). "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996).

▇▇▇ Although Reimundo and Antonia were represented by a legal assistant, *see supra* n. 3, the obligation of the ALJ to develop fully the disability record of a disability claimant is not obviated by the presence of a paralegal or a legal assistant representing the claimant. *See Smith v. Bowen*, 687 F.Supp. 902, 906 (S.D.N.Y.1988) ("It may be true . . . that 'plaintiff was represented by Harlem Legal Services, which has considerable expertise in litigating Social Security Claims.' But plaintiff's actual representative before the ALJ was a paralegal. . . . The ALJ's duty to develop the comprehensive record requisite for an equitable determination of disability is greatest when claimant is unrepresented; but the duty still exists when plaintiff is represented and even more, as here, where plaintiff is represented at hearing by a paralegal.") (citations omitted). Indeed, if the claimant appears without the aid of counsel, "the ALJ has a duty 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.' "

*Cruz*, 912 F.2d at 11 (citing *Echevarria*, 685 F.2d at 755).

▇▇▇ Plaintiff's argument that the ALJ failed to adequately develop the record with respect to Reimundo's asthma, and improperly found that Reimundo's asthma did not fit the criteria of the Listing is without merit. The ALJ specifically addressed, *inter alia*, section 103.03 of the Listings and found that Reimundo's condition did not meet the criteria based on a thorough investigation of all the relevant facts:

> [T]he claimant's asthma does not meet the requirements of Section 103.03 or Section 3.03 of the Listings because there is no documentation of chronic asthmatic bronchitis, recent recurrent asthmatic attacks, or severe attacks occurring at least once every 2 months or on average at least 6 times per year, despite prescribed treatment.

Tr. 25. The ALJ's conclusion that Reimundo's asthmatic condition did not satisfy the criteria because the claimant did not suffer from "[p[ersistent low-grade wheezing between acute attacks or absence of extended symptom-free periods," 20 C.F.R. pt. 404, subpt. P, app. 1, 103.03C, is supported by substantial evidence. Plaintiff points to a July 29, 1991 report by Dr. Filipkowski, a member of the Pediatric Team at Montefiore, that Reimundo "wheezes." Tr. 255. This tenuous link between the record and the Listings is unavailing in the face of substantial contrary evidence cited by the Commissioner. A chest x-ray taken on August 6, 1991 was "negative." Tr. 259. Similarly, in an August 7, 1991 examination, Dr. Florez of K.M.D. Management Services observed the following: "CHEST: Symmetrical, no retractions. Good even air entry. No rales, rhonchi, wheezes. Good resonance on percussion." Tr. 257. Dr. Ginsberg of Montefiore Medical Center reported that Reimundo's asthma was "under control with ventolin pump and nebulizer." Tr. 269. Even Dr. Filipkowski's report states only that Reimundo "begins to wheeze when he walks long distances." Tr. 255. In short, the record is devoid of any evidence that Reimundo suffered "[p]ersistent low-grade wheezing between acute attacks" or an "absence of ex-

tended symptom-free periods." 20 C.F.R. pt. 404, subpt. P, app. 1, 103.03C. We conclude that the ALJ fulfilled his duty to develop fully the record with respect to Reimundo's asthmatic condition. *See* Tr. 43–45.

## II. Individualized Functional Assessment

The fourth and final step of the sequential evaluation requires the ALJ to conduct an individual functional assessment (IFA) of the claimant. 20 C.F.R. § 416.924(b)–(f). Plaintiff argues that the ALJ failed to conduct properly an IFA for two reasons: (1) The ALJ disregarded the IFA conducted by Reimundo's long-time treating physician, Dr. Guillaume, and (2) the ALJ failed to consider the "other factors" as required by the regulations (such as high absenteeism from school). The Commissioner argues that there is substantial evidence supporting the ALJ's conclusion that Reimundo is not disabled within the meaning of the Act.

■ Under the treating physician rule of the Second Circuit, "the expert opinion of a claimant's treating physician regarding his 'medical disability, i.e., diagnosis and nature and degree of impairment, is ... binding on the fact-finder unless controverted by substantial evidence.'" *Hidalgo v. Bowen*, 822 F.2d 294, 296–97 (2d Cir.1987) (quoting *Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir. 1986)). *See also Cruz*, 912 F.2d at 12 (same). When reviewing the grant or denial of disability benefit claims, the Second Circuit consistently has adhered to the treating physician rule. *Hidalgo*, 822 F.2d at 294. The cases in which the Second Circuit Court of Appeals has reversed the denial of benefits due to the ALJ's failure to apply properly the treating physician rule are "legion." *Hidalgo*, 822 F.2d at 297.

In the course of treating Reimundo, Dr. Guillaume completed a standard IFA form evaluating Reimundo's condition. *See* Tr. 290–92. Dr. Guillaume concluded that Reimundo suffered moderate impairment in three domains (cognitive, communicative, and motor) 'and less than moderate impairment in three domains (social, personal/behavioral, and concentration). *Id.*

Despite Dr. Guillaume's evaluation, the ALJ relied entirely on the contrary conclu-

sions of Dr. Bernanke, a non-treating medical expert who testified at the Hearing, in determining whether Reimundo suffered impairments in each of the six domains:

Q. [C]an you tell me whether or not any of his conditions would be likely to affect his cognitive development?

A. Not directly, no. . . .

Q. [W]ould any of his impairments be expected to have any [e]ffect on his communicative development?

A. No.

Q. What about his motor development?

A. [I] don't think that it would affect his motor development, but the symptoms that he has, in the left, lower extremity, will certainly affect his mobility and capability of participating in athletic activities. . . .

Q. All right. Would any of the impairments ... be expected to affect his social development?

A. No. I don't believe so. . . .

Q. Was there any evidence in the record ... that his impairments have adversely affected his personal behavioral development?

A. Not that I'm aware of.

Q. Would any of his impairments be expected to adversely affect his concentration, persistence or pace? . . . .

A. No.

Tr. 51–53.

The ALJ then dismissed without explanation Dr. Guillaume's evaluation with respect to Reimundo's cognitive and communicative function domains:

The medical expert's assessment of the claimant's disabilities in the above described areas of functioning was in full agreement with that indicated in the Individualized Functional Assessment (IFA) form completed by Jacqueline Guillaume, M.D., the claimant's treating physician (Exhibit 62). Dr. Bernanke [the medical expert] testified that this IFA, as further amplified by the assessment of another treating physician, shows that the claimant's only limitation is with regard to running, climbing stairs, or engaging in stren-

uous activity. Thus, there is evidence of a moderate limitation imposed upon the claimant's motor functioning.

The records from other treating and consultative examining sources do not reveal any abnormal development or indicate marked limitation with respect to any area of functioning. The examination report completed in August, 1991 by E. Florez, M.D., a consultative physician, states that the claimant has had normal developmental milestones, specifying that he sat at 6 months, walked at 10½ months, was toilet-trained at age 3, said his first words at 7 months, and is now doing well in school (Exhibit 51).

Based upon the evidence of record and the testimony presented, I find that there is no evidence of limitation in the areas of cognitive, communicative, social, and personal/behavioral functioning, and no evidence of limitation imposed upon concentration, persistence, and pace. The claimant's mother testified, with regard to the claimant's social interaction, that he relates well to family members and friends. She did not describe any discipline problems or academic problems, with the exception of the claimant being left back in the first-grade.

Tr. 26.

We do not find improper *per se* an ALJ's use of a medical advisor to explain complex medical problems in terms understandable to lay examiners. *Richardson v. Perales*, 402 U.S. 389, 408, 91 S.Ct. 1420, 1430–31, 28 L.Ed.2d 842 (1971). However, "[t]he advisors' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant." *Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir.1990) (citations omitted). The Supreme Court of the United States has endorsed the use of medical advisors to aid trial examiners in these situations:

> We see nothing "reprehensible" in the [use of medical advisors], as the claimant would describe it. The trial examiner is a layman; the medical advisor is a board-certified specialist. He is used primarily in complex cases for explanation of medical problems in terms understandable to the layman-examiner. He is a neutral advisor. This particular record discloses that [the medical advisor] explained the technique and significance of electromyography. He did offer his own opinion on the claimant's condition. That opinion, however, did not differ from the medical reports. [The medical advisor] did not vouch for the accuracy of the facts assumed in the reports.

*Richardson v. Perales*, 402 U.S. 389, 408, 91 S.Ct. 1420, 1430–31, 28 L.Ed.2d 842 (1971). Nevertheless, the opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis. *Hidalgo*, 822 F.2d at 297. In this case, the ALJ concluded that the medical expert's assessment (that Reimundo is only moderately impaired in motor function and less than moderately impaired in the other domains) "was in full agreement" with the IFA conducted by Dr. Guillaume. Tr. 26. This conclusion plainly is contrary to the evidence. Dr. Guillaume's examination concluded that Reimundo suffered a moderate impairment in three domains: communicative, cognitive, and motor. *See* Tr. 290–92. No other treating physicians in the record made any determination as to Reimundo's communicative or cognitive function domains.[5] And yet, the

---

5. The record contains an IFA completed by Dr. John of Montefiore, purportedly a treating physician, in which Dr. John finds the patient normal in all domains, except in motor function (motor impairment due to vaso-occlusive disease). *See* Tr. 287–89. Plaintiff argues that this IFA should be disregarded entirely because the IFA does not indicate Reimundo's name or social security number. Furthermore, Antonia did not recognize Dr. John's name when the ALJ inquired about him. *See* Tr. 57. Plaintiff argues that it is likely that Dr. John may have been commenting on the impairments of another pediatric patient and not on Reimundo. Pl.'s Mem., at 9 n. 9.

We do not agree that Dr. John's IFA necessarily must be disregarded. His diagnosis is remarkably similar to the conclusions of every other examination in the record: asthma requiring daily medication; pain in left leg and calf while walking, running or climbing stairs; impaired motor function in left leg due to vaso-occlusive disease; had aorta-femoral bypass graft; cannot do strenuous work or run or climb stairs due to his motor impairment; increased physical activity appears to exacerbate asthma. Tr. 287–89. We do not rule at this time whether Dr. John's IFA constitutes substantial evidence sufficient to

medical expert concluded (as did the ALJ) that Reimundo did not suffer a moderate impairment in these two domains. Tr. 26–28, 51–53.

▬▬ Although the ALJ is not required to reconcile every ambiguity and inconsistency of medical testimony, *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.1984), we cannot accept an unreasoned rejection of evidence that supports plaintiff's position. *Fiorello v. Heckler*, 725 F.2d 174, 175–76 (2d Cir.1983). The ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error. *Smith v. Bowen*, 687 F.Supp. 902, 904 (S.D.N.Y.1988). The medical conclusions of a treating physician constitutes evidence that should not be rejected without explanation. *See Figueroa v. Chater*, 911 F.Supp. 98, 102 (W.D.N.Y.1996) ("The ALJ's decision and determination must be based on the medical record and not his own independent assessment. Where there is conflicting evidence ... the ALJ must explain the basis for his determination rejecting evidence that supports a finding of disability. Unless the ALJ explains the basis for his decision, it is impossible for the claimant and for a reviewing court to determine whether the ALJ's decision was supported by substantial evidence.").

Our conclusion does not suggest that because the evidence of the treating physician must be granted deference that the plaintiff is perforce entitled to prevail. Clearly, the totality of the circumstances are open for consideration, but the ALJ cannot ignore the medical evidence provided by a treating physician. Consideration must be given to the opinion of a treating physician which can then be balanced against the other evidence.

▬▬ On remand, we direct the Commissioner to keep in mind that where a treating physician's opinion is not granted controlling weight, five factors should be applied in determining how much weight a treating physician's opinion merits: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) supportabili-

ty; (4) the opinion's consistency with the record as a whole; and (5) whether the opinion is that of a specialist. *See* 20 C.F.R. § 416.927(d)(1)–(5); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir.1993). Generally, the longer a treating source has treated a patient and the more times the patient has been seen by that treating source, the more weight must be given to the opinion. *Schisler*, 3 F.3d at 570.

### III. Failure to Re–Open the 1988 Application

The Social Security Regulations pertaining to Supplemental Security Income claims for children were revised following the Supreme Court's decision in *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). In *Zebley*, the Supreme Court invalidated the Commissioner's regulatory test for determining whether a child is entitled to SSI benefits. Prior to *Zebley*, the regulatory test considered only (1) whether the child was engaged in substantial gainful activity, (2) whether his or her impairment met the duration requirement, and (3) whether the impairment matched or was medically equal to an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. *Zebley*, 493 U.S. at 526, 110 S.Ct. at 889. If the child could not qualify under the Listings, he or she was denied benefits without further inquiry. *Zebley*, 493 U.S. at 526, 110 S.Ct. at 889. According to the Supreme Court, this "abbreviated" method was inadequate because it did not provide for the same type of individualized functional analysis in child disability claims that is provided for adult disability claims. *Id.*, at 541, 110 S.Ct. at 896–97. The Supreme Court found that this three-step evaluation violated the SSA's requirement for SSI benefits to be given to a child with an impairment of "comparable severity" to an adult and was "manifestly contrary to the statute." *Id.* This decision resulted in the promulgation of step four in which SSA must conduct an IFA of a minor claimant.

---

support a decision contrary to Dr. Guillaume's evaluation because the ALJ did not indicate whether or not he relied on Dr. John's IFA. We

direct the Commissioner to make reasonable efforts to determine whether Dr. John's IFA does indeed reflect an examination of Reimundo.

Plaintiff argues that the Supreme Court ordered the SSA to automatically re-open all cases denied between January 1, 1980 and February 27, 1990 under the old regulatory standards and those denied between February 27, 1990 and February 11, 1991. Plaintiff argues that the ALJ's decision not to re-open the 1988 Application due to a lack of new and material evidence violated the redetermination standard as set forth by the *Zebley* class action suit. However, the record indicates that the Commissioner considered evidence at least as early as 1988, and conducted a four-step evaluation pursuant to *Zebley* based on that evidence.

There is no evidence, nor does plaintiff argue, that Reimundo's condition as alleged under the 1988 Application is any different than his condition as alleged under the 1990 Application. Absent a showing that the 1988 Application differs in some material respect from the 1990 Application, we see no reason why the ALJ should be required to re-open the 1988 Application.

### CONCLUSION

For the foregoing reasons, we remand this matter to the Commissioner for further proceedings, and we direct the Commissioner to (1) consider Dr. Guillaume's evaluation of Reimundo's cognitive, communicative and motor function domains, and, if Dr. Guillaume's opinion is not granted controlling weight, apply the five factors enumerated in *Schisler v. Sullivan,* 3 F.3d 563, 567 (2d Cir.1993), in determining how much weight Dr. Guillaume's opinion merits; and (2) determine how much weight Dr. John's evaluation merits after making a reasonable determination as to whether Dr. John's evaluation reflects an examination of Reimundo.

SO ORDERED.