In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-3636

LATESHA MOON,

*Plaintiff-Appellant,*

*v.*

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12-CV-05593 — **Susan E. Cox**, *Magistrate Judge.*

ARGUED MAY 27, 2014 — DECIDED AUGUST 14, 2014

Before POSNER, EASTERBROOK, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge*. An administrative law judge found in 2010 that Latesha Moon was not disabled and thus not entitled to Social Security disability benefits. The Appeals Council and the district court upheld the ALJ's decision. Moon argues in this appeal that the ALJ improperly discounted her evidence of chronic migraine headaches. We

agree that the ALJ's treatment of the evidence related to her migraines was unreasonable and failed to build a logical bridge between the evidence and the decision denying benefits. We reverse the district court's judgment and remand this case to the agency for further consideration. Because Moon has been receiving Social Security disability benefits based on a later application, the only issue on remand will be whether she was disabled between August 2008 and the later date from which benefits have been paid.

Moon is a mother who was 26 years old at the time of her application. She has worked in the past as a cashier, bank teller, and certified nursing assistant. For years she has suffered from numerous documented health issues, including back and joint problems, mild sleep apnea, depression, and migraine headaches. Most of these problems are related to the fact that Moon is exceptionally obese: at a height of 5′5″, she weighs over 400 pounds, giving her a body mass index (BMI) of around 67. A BMI between 18.5 and 24.9 is considered normal, and a person is considered obese when his or her BMI reaches 30. See "About BMI for Adults," Centers for Disease Control and Prevention, http://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi /index.html) (visited Aug. 13, 2014).

In support of her application for disability benefits, Moon submitted extensive medical records. On the medical issue that is central to this appeal—her migraine headaches—the evidence showed that she was diagnosed as early as 2005 and that she saw doctors about her headaches many times over the years that followed. She was prescribed Amitryptyline and Zomig to treat her headaches in 2005, but she did not take these medications because she feared side effects.

Later she was prescribed Imitrex and Motrin, both of which she was taking at the time of her May 2010 hearing before the ALJ.

At the hearing, Moon testified about the seriousness of her migraines, their effect on her activities, and their treatment. She explained that the headaches had become worse over the last two or three years than they had been in 2005. Over that period, she had headaches on most days, and her headaches could last up to three days. Often the pain would be so bad that she needed to lie down in the dark until it passed. She said she believed that the medications Motrin and Imitrex caused side effects but that she had "no choice" but to take them because of the severity of her pain.

In his written decision denying Moon's claim for benefits, the ALJ went through the standard five-step analysis for determining whether a person is disabled within the meaning of the Social Security Act. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). He found at step one that Moon was no longer engaged in substantial gainful activity (i.e., was not working). At step two he found that her combination of impairments—specifically back problems, obesity, sleep apnea, and headaches—qualified as "severe," meaning that her ability to perform work activities was significantly limited as a result of the impairments.

At step three the ALJ found that Moon's combination of impairments did not meet the criteria for an automatic finding of disability. (If durational requirements are satisfied, conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, entitle a claimant to benefits without further analysis beyond step three.) As a result, the ALJ was required to determine Moon's "residual functional capacity" at step four.

Residual functional capacity is the extent to which a person can still work despite having health problems. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ found that Moon, though suffering from a severe combination of impairments, was still capable of doing sedentary work if she would be permitted to sit or stand at will. He found she could lift 20 pounds occasionally and 10 pounds frequently and could also stoop occasionally, but should not climb ropes, ladders, or scaffolding. The ALJ based his assessment largely on the opinions of two doctors who had reviewed Moon's medical records but had not examined her. Dr. Young-Ja Kim, a state agency medical reviewer, provided a report. Dr. Anthony F. Francis, a medical expert, provided interrogatory answers that the ALJ described as being "in full agreement" with Dr. Kim's report.

On the specific issue of Moon's headaches, the ALJ did not explain in his decision how they influenced his determination of her residual functional capacity, but he implied that their role was minimal. He noted that the "alleged headaches" had begun in 2005, three years before Moon stopped working. He also pointed out that she had not taken the medications she was prescribed in 2005 and that a 2008 MRI of her head was "unremarkable," showing "no cause for headaches." Moreover, the ALJ explained, Moon had "denied backaches, headaches, and depression" at a visit to her doctor in March 2009. Regarding Moon's testimony about her headaches, the ALJ highlighted a perceived tension between her testimony that her current medications caused side effects and her medical records, which did not show that she had reported these side effects to her doctors.

Based on Moon's residual functional capacity, the ALJ found at step four that she was not capable of doing her past work. At step five, however, he found that Moon was not disabled because sedentary jobs with a sit/stand option exist in significant numbers. After the Appeals Council agreed with the ALJ's assessment, Moon sought judicial review in the district court, which also upheld the ALJ's decision.

Moon argues on appeal that the ALJ, in determining her residual functional capacity, did not sufficiently account for her migraines. Like the district court, we review the ALJ's determination to see if it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination. *Moore*, 743 F.3d at 1121.

In this case, the ALJ's analysis of the evidence related to Moon's migraines is not logically connected to his determination of her residual functional capacity. He found at step two that her headaches were part of a severe combination of impairments. At step four, though, he seemed to imply that she did not actually suffer migraines when he addressed the specifics of her "alleged headaches," despite the undisputed record of years of treatment for migraines. Even if the ALJ did not mean to imply that Moon had no migraines, though,

his analysis of the migraine evidence is problematic in several respects.

First, the ALJ's description of Moon's March 2009 visit to the doctor was mistaken. He wrote that she "denied headaches" as if she denied ever having them. The record of that visit shows that Moon, who was there to receive test results, denied *currently* having a headache. The fact Moon did not have a headache at the time of that visit is no reason to conclude anything about the frequency or severity of her migraines.

Second, the ALJ reliance on Moon's "unremarkable" 2008 MRI as evidence that her migraines were not a significant problem is not supportable. No doctor ever suggested that the MRI evidence meant anything about Moon's migraines, and for good reason. Doctors use MRIs *to rule out other possible causes of headache*—such as a tumor—meaning that an unremarkable MRI is completely consistent with a migraine diagnosis. See "Migraines: Tests and Diagnosis," Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/migraine-headache/basics/tests-diagnosis/con-20026358 (visited Aug. 13, 2014). This mistaken reading of the evidence illustrates why ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves. See *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) ("[T]he ALJ seems to have succumbed to the temptation to play doctor when she concluded that a good prognosis for speech and language difficulties was inconsistent with a diagnosis of mental retardation because no expert offered evidence to that effect here."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to

the temptation to play doctor and make their own independent medical findings.").

Finally, the ALJ's emphasis on the fact that the migraines began long before Moon stopped working and her refusal to take prescribed medication in 2005 failed to come to grips with her 2010 testimony that her headaches had become worse in recent years. Perhaps the ALJ did not credit that portion of her testimony, but he did not actually say so or explain why. And the reason he gave for doubting another portion of her testimony about migraines—her statement that she experienced side effects from her current medications—does not justify rejecting all of her testimony about migraines without further explanation. The ALJ cited a lack of medical documentation that she experienced side effects, but that lack of documentation does not control the impact migraines had on her life and ability to work.

Perhaps the ALJ's apparently dim view of Moon's testimony about her migraines resulted in part from his broader skepticism of her credibility, but his more general credibility assessment is problematic as well. For example, the ALJ called into question Moon's testimony that she had needed a cane to walk since 2009 by pointing to a particular doctor's appointment where she did not bring a cane—an appointment that took place in 2008. He also split hairs unfairly, in our view, when he called her testimony that she could not lift more than 10 pounds "inconsistent" with a doctor's finding in a consultative examination that she could lift no more than 10 to 15 pounds.

The government attempts to support the ALJ's analysis of the migraine evidence by contending that the report of Dr. Kim and the interrogatory answers of Dr. Francis (the evi-

dence that the ALJ relied upon most heavily) took Moon's migraines into account sufficiently, thus relieving the ALJ of any further obligation to account for the migraines. Since the ALJ did not mention Moon's migraines in his discussion of the opinions of Drs. Kim and Francis, the government's argument violates the principle established in *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943), that an agency's lawyers cannot defend an agency decision in court on a ground the agency did not itself invoke. See *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012).

Apart from *Chenery* concerns, the doctors' opinions cannot provide the needed logical bridge. Dr. Kim did not actually specify how Moon's migraines relate to the residual functional capacity she found. She did not address the possibility that a migraine could keep Moon at home in bed, apparently understanding Moon's "history of frequent migraines" to have implications only for her ability to lift, stoop, and stand. Dr. Francis's report provides even less support for the government's position. He noted: "There is not enough information [in the medical records] on the frequency of [Moon's] migraines to determine how much these contribute to her overall impairment." Unlike Dr. Kim and Dr. Francis (who, remember, never even met Moon), the ALJ had the opportunity to hear Moon's own account about how her migraines limit her activities, and as explained above, his apparent disbelief of her testimony is not justified in his decision.

Once the ALJ's unsupported assessment of Moon's migraines is set aside, the question becomes just how serious her migraines were beginning in August 2008. If her testimony about needing to remain in bed multiple days per

week is credited, she could not have held a full-time job. We do not decide that her testimony must be credited. We conclude only that the ALJ failed to build a logical bridge between substantial evidence and his conclusion that Moon was capable of a limited range of sedentary work after August 2008. The judgment of the district court is REVERSED and the case is REMANDED to the agency for further proceedings consistent with this opinion.