**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 6, 2020
Decided November 30, 2020

**Before**

DIANE P. WOOD, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-3110

| | |
|---|---|
| HEIDE NOONAN, <br>     *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
|     *v.* | No. 18-CV-641 |
| ANDREW M. SAUL, Commissioner of Social Security, <br>     *Defendant-Appellee.* | Nancy Joseph, <br> *Magistrate Judge.* |

## O R D E R

Heide Noonan applied for disability insurance benefits based on a variety of health problems, including diabetes, neuropathy, lupus, and depression. An administrative law judge denied her application on the ground that Noonan remained able to perform sedentary work with certain limitations. The district court upheld the determination, and Noonan now appeals. Although our review proceeds under the deferential substantial evidence standard, we conclude a remand is warranted to allow the ALJ to more fully consider whether the effects and limitations of Noonan's neuropathy leave her unable even to perform sedentary work. The ALJ's prior determination took little to no stock of Noonan's own account of her

neuropathy-related conditions and that deficiency leaves us with insufficient confidence that the denial of benefits rooted itself in substantial evidence.

**I**

Noonan applied for disability insurance benefits in late 2013 based on a litany of ailments, including diabetes, diabetic neuropathy, lupus, and depression. She had worked as a mortgage-loan processor for about five years until her employer eliminated her position in September 2013. Noonan contends she became disabled at approximately that same time.

Noonan suffers from type 1 (or insulin-dependent) diabetes and related neuropathy. Diabetic neuropathy is a form of nerve damage caused by diabetes and often manifests itself in pain, especially in the legs and feet.

Noonan underwent periods of hospitalization in 2013 and again in 2015 for diabetic ketoacidosis, a life-threatening complication of diabetes that occurs when the body lacks insulin and starts to break down fat, producing ketones that can poison the body. During this time period, her doctors regularly observed her struggling to control her diabetes. Circumstances improved when Noonan adjusted her insulin intake and received more guidance on how better to manage her diabetes.

In time Noonan experienced increased nerve pain, especially in her legs and feet, leading her doctors to prescribe Gabapentin to ease the discomfort. Noonan saw a pain-management specialist in late 2016, and her medical records from this general time period record her reporting severe pain in her legs and feet, especially when trying to perform household chores and otherwise go about her daily living.

Along the way, in late 2013, Noonan learned she also suffered from lupus. Her doctors put her on Plaquenil, which stabilized her condition. Indeed, by July 2014, her primary care doctor noted that Noonan exhibited "[n]o clinical evidence of [lupus]." Noonan stopped taking Plaquenil in August 2016, when an eye scan showed ocular toxicity, a side effect of the medication. Three months later, however, her doctor noted that the lupus remained stable, with Noonan reporting no further flare-ups of the disease.

Noonan also has experienced mental illness, primarily anxiety and depression, which has inhibited her ability to manage her diabetes. During the relevant period, including twice in 2014 and again starting in April 2016, she received therapy.

Upon Noonan's applying for disability benefits, three state-agency consultants reviewed her medical records and concluded that she could perform light work with additional limitations. First, in May 2014, Dr. Ronald Shaw opined that Noonan could perform light work but limited her to what in the Social Security lexicon is called "frequent fingering." SSR 85-15, 1985 WL 56857 (Jan. 1, 1985) (defining fingering as "involv[ing] picking, pinching, or otherwise working primarily with the fingers"); see also *Selected Characteristics of the Occupations Defined in the Revised Dictionary of Occupational Titles*, App. C, Physical Demands at C–3 (1993) (defining "frequently" as an "[a]ctivity or condition [that] exists from 1/3 to 2/3 of the time."). That same month, Dr. Beth Jennings, a state-agency psychologist, opined that Noonan's depression was stable with medication and not a severe mental impairment. A third state-agency physician, Dr. Mina Khorshidi, reviewed Noonan's medical records in January 2015 and concurred that Noonan could perform light work with only frequent fingering.

After the agency denied Noonan's application, a hearing ensued before an ALJ in January 2017. Noonan testified and focused on how the pain resulting from her neuropathy affects her daily activities. She explained that the pain in her feet, legs, hips, shoulders, and arms affects her ability to walk, sit, and even get out of bed, adding that she spends four days a week lying down almost all day. Noonan stated that she can dress herself and, with the assistance of a chair, shower on her own. She testified that she lives with her husband and mother-in-law and relies on them to do most of the household chores, including cooking. Noonan further explained that her carpal tunnel syndrome prevents her from grabbing and gripping many things.

The ALJ also received testimony from a vocational expert. The VE addressed whether jobs existed for someone like Noonan who could perform light or sedentary work with certain accompanying limitations. The limitations included performing only simple, routine tasks and making simple decisions, a workplace with few changes and no fast-paced productivity requirements, and restrictions on climbing and using her fingers. Although Noonan's past work as a mortgage-loan processor is considered sedentary work, the VE opined that someone requiring additional postural and mental limitations would not be able to perform this past work. But from there the VE stated that a person restricted to sedentary work with the additional functional limitations could work as an order clerk, a final assembler, or a check weigher. When asked if an

individual who missed more than two days of work unscheduled per month could perform any of those same jobs (or others), the VE answered no.

Applying the agency's familiar five-step analysis, see 20 C.F.R. § 404.1520(a), the ALJ found that Noonan was not disabled. The ALJ determined that Noonan had not engaged in substantial gainful activity since the alleged onset date in September 2013 (step one) and that she suffers from the severe impairments of degenerative disc disease, lumbar radiculopathy, lupus, osteoarthritis, depression, diabetes mellitus, hypertension, and bilateral carpal tunnel syndrome (step two). The ALJ then added that Noonan did not have an impairment or combination of impairments that met or equaled a listed impairment (step three). Next, the ALJ found that Noonan had the residual functional capacity to perform sedentary work, see 20 C.F.R. § 404.1567(a), with additional postural limitations, including no more than frequent fingering and avoiding work requiring climbing. From there the ALJ further limited Noonan to simple, routine tasks in a workplace with minimal changes and free of fast-paced requirements. Based on this RFC, the ALJ determined that Noonan, while not able to work as she had in the past as a mortgage-loan processor (step four), could work in the positions identified by the VE at the hearing (step five).

In landing on this RFC determination, the ALJ seemed to place near exclusive reliance on Noonan's medical records. Noonan's "statements concerning the intensity, persistence, and limiting effects of [her reported] symptoms," the ALJ reasoned, "are not entirely consistent with the medical evidence and other evidence in the record" and "d[o] not support the extent of her allegations." The ALJ's ensuing analysis rooted itself primarily in observations of Noonan's lupus stabilizing during the relevant period. The ALJ likewise underscored that the medical records showed that Noonan had received successful treatment for her mental impairments.

Noteworthy too is the ALJ's disagreement with the state-agency consultants' opinions that Noonan could perform light work. The ALJ concluded that the medical record suggested otherwise and therefore, in determining the RFC, restricted Noonan only to sedentary work in jobs limited to frequent bilateral fingering and defined by simple, routine tasks, no fast-paced productivity requirements, and few workplace changes.

After the Appeals Council denied review, Noonan sought review in the district court, which affirmed the ALJ's denial of benefits. This appeal followed.

## II

Our review concentrates on whether substantial evidence supports the ALJ's decision. See *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2009) (citing 42 U.S.C. § 405(g)). While the standard is deferential, we will not "scour the record for supportive evidence." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Rather, it is up to the ALJ to articulate the relevant evidence and explain how that evidence supports her ultimate determination. *Id.* Part of doing so is accounting for an applicant's own account of her limitations or, at the very least, explaining why the applicant's description of her limitations is not reliable or accurate. See *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014); see also *Steele v. Barnhart*, 290 F.3d 936, 941–42 (7th Cir. 2002) (explaining an ALJ must provide sufficient reasons for discounting applicant's testimony about limitations).

We have no reservation with the ALJ's consideration of Noonan's lupus or mental impairments. The ALJ's analysis on those fronts was well-rooted in the record, soundly reasoned, and supported by substantial evidence.

Where we have reservation, however, is with the ALJ's sparing consideration of Noonan's neuropathy. The ALJ seemed to focus the lion's share of her analysis on lupus. Even more, the ALJ seemed to discredit, or at the very least severely discount, Noonan's account of the limitations caused by the neuropathy—most specifically, her difficulty standing and even sitting for meaningful periods of time. The ALJ's failure to expressly address these limitations concerns us because restricting Noonan to sedentary work may be insufficient. The agency's regulations define "sedentary work" as work that involves "sitting" and "occasionally" requires "walking and standing." 20 C.F.R. § 404.1567(a). Agency guidance further defines "occasionally" in this context as "occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday." SSR 96-9p, 1996 WL 347185 (July 2, 1996).

On the record before us, we cannot conclude that Noonan is able to work a job that requires standing or walking for up to two hours during a single work shift. Noonan's own testimony strongly suggests she cannot, while the medical record to our eye is less than clear on the point. Perhaps some evidence somewhere in the record addresses the question, yet it is not our responsibility to "scour the record for supporting evidence." *Moon*, 763 F.3d at 721. That responsibility falls to the ALJ in the first instance, and the analysis on this front fell short. All of this leads us to conclude the

ALJ's denial of benefits is not supported by substantial evidence. The proper course in this circumstance is to remand to allow the ALJ to revisit the RFC and, more specifically, whether Noonan can work a sedentary job that nonetheless may put her on her feet for up to two hours a day.

For these reasons, we VACATE the agency decision and REMAND for further proceedings consistent with this Order.