**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 3, 2021
Decided June 21, 2021

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 20-2899

| | |
|---|---|
| MELINDA R. MADDOX, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. |
| *v.* | No. 1:19-CV-299-JVB |
| ANDREW M. SAUL, Commissioner of Social Security, *Defendant-Appellee*. | Joseph S. Van Bokkelen, *Judge*. |

**O R D E R**

Melinda Maddox applied for disability insurance benefits and supplemental security income based on a variety of health problems including migraines and headaches. An administrative law judge denied her application on grounds that Maddox could perform a range of light work with additional limitations—a determination upheld by the district court. On appeal, Maddox argues that the ALJ failed to adopt enough functional limitations caused by her migraines. Because

substantial evidence supports the ALJ's assessment of the effects of Maddox's migraines, we affirm.

## I.   Background

Maddox, who is now 50 years old, applied for disability insurance benefits and supplemental security income in 2016, asserting she had been disabled since August 23, 2015 because of a litany of medical ailments including her severe migraines. Before the onset of her disability in 2015, Maddox had worked for nearly thirty years as a clerk for the Veterans Administration and the Fort Wayne Housing Authority, and as a case manager for a healthcare provider.

Maddox first saw neurologist Rakesh Khatri, M.D., in 2014 about her headaches that would last for three to five days. Dr. Khatri's differential diagnosis was a pseudotumor cerebri or migraine headaches, and he discussed various options including seeing an ophthalmologist, conducting a brain MRI, and working on weight loss. Maddox saw ophthalmologist Daniel Krach, M.D., who concluded that her headaches were likely related to eye strain and instructed Maddox to wear reading glasses. Maddox returned to Dr. Khatri in 2015 and reported that she now had glasses and had experienced no headaches for five months with the exception of the past several days. Because the headaches had disappeared for five months, Dr. Khatri concluded that they were caused by eye strain but had some features of migraines. He prescribed medication, and she reported her migraines as stable the next month.

In April 2016, Maddox saw Dr. Khatri again and reported an increase in the frequency and duration of her headaches. He concluded that Maddox likely has mixed headache disorder and her headaches have "migrainous characteristics" so he increased her medication. Her brain MRI showed no abnormalities. Throughout 2017, Maddox regularly saw a pain management specialist, Firas Kara, M.D., for shoulder, knee, and back pain. During these visits, she reported from zero to thirty headaches, and from one to four migraines, every month. Maddox also went to the emergency room in March 2017 for multiple complaints, including a migraine headache, which resolved after she received medication. A brain CT conducted the same month showed no abnormalities.

The agency denied Maddox's application initially and on reconsideration, and she requested a hearing before an ALJ which took place in January 2018. When the ALJ asked why Maddox could not work, she discussed her back pain and issues with fecal

incontinence following a rectal surgery, but did not mention her migraine headaches. When her counsel asked about her migraine headaches, she explained that she got them two or three times a month, for several days at a time, and that they were incapacitating. Of the eight prescription medicines she listed, three were for, or expected to help with, migraines.

Applying the agency's familiar five-step analysis, *see* 20 C.F.R. § 404.1520(a), the ALJ concluded that Maddox was not disabled. The ALJ found that Maddox had not engaged in substantial gainful activity since the alleged onset date (step one) and that she suffered from eight severe impairments including migraines (step two). The ALJ then determined that Maddox did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment (step three). Next, the ALJ found that Maddox had the residual functional capacity to perform light work, *see* 20 C.F.R. §§ 404.1567(b), 416.967(b), with additional postural and environmental limitations. As relevant to this appeal, the ALJ found that Maddox could tolerate frequent exposure to extreme heat and cold, wetness, humidity, vibrations, fumes, odors, dusts, gases, and poor ventilation. Further, Maddox should be exposed to no more than moderate noise, and should have no exposure to unprotected heights or dangerous machinery, and no concentrated exposure to bright flashing lights. Based on this residual functional capacity ("RFC"), the ALJ determined that Maddox could not perform her past work (step four) but could perform other jobs identified by the vocational expert at the hearing (step five).

In supporting the residual functional capacity assessment for migraines, the ALJ primarily cited Maddox's medical records. While Maddox's impairments could be expected to cause some of her alleged symptoms, the ALJ concluded, her statements about the intensity, persistence, and limiting effect of the symptoms were not entirely consistent with medical evidence. With regard to migraines, the ALJ noted that in the six months before the onset date of Maddox's disability, her headaches were frequently reported as "stable," and they improved once a doctor prescribed eyeglasses. The ALJ also highlighted an appointment in 2017 at which Maddox reported 30 headaches a month, but noted that the examiner recorded her complaint as "vague" and, at an appointment the following month, noted that Maddox was laughing and smiling during the exam despite reporting having a headache. And finally, the ALJ explained that Maddox reported a different number of headaches to different providers—she told one that she was having headaches three days a week, and she told another that she was having headaches only four times a month. The ALJ concluded the discussion of

limitations in the RFC by stating that she had considered Maddox's migraine headaches and limited her accordingly.

The Appeals Council denied review, making the ALJ's decision final, *see* 20 C.F.R. § 404.981, and the district court upheld it.

## II.  Analysis

On appeal, Maddox challenges only the ALJ's finding regarding limitations caused by her migraines and headaches, arguing that the RFC omits necessary restrictions. This court will overturn an ALJ's decision only if it is not supported by "substantial evidence," 42 U.S.C. § 405(g), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). It is not this court's role to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)).

Maddox argues that the ALJ failed to build a logical bridge from the evidence about her headaches and migraines to the limitations that she imposed or omitted. First, she asserts that the ALJ minimized the effect of the migraines and headaches by noting that they improved when Maddox started wearing reading glasses. But the record shows that Maddox did report "significant improvement" in her headaches after getting glasses, and Dr. Khatri (whom Maddox deems "the most credentialled and deferred-to on the topic of the headaches/migraines") concluded that her eye strain was a cause of her headaches.

Maddox next asserts that the "gist of the ALJ's analysis regarding migraines seems to be that the migraines are not really occurring" or "fake" because no objective medical evidence confirms their existence. But the ALJ did determine that Maddox had been diagnosed with migraines that would significantly limit her ability to carry out basic work activities. *See* 20 C.F.R. §§ 404.1509, 404.1522. And contrary to Maddox's assertion that the ALJ undermined the severity of the migraines because of the lack of objective medical evidence, the ALJ only briefly mentioned the normal imaging of Maddox's head. *Cf. Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (explaining "[d]octors use MRIs to *rule out other possible causes of headache*—such as a tumor— meaning that an unremarkable MRI is completely consistent with a migraine

diagnosis") (emphasis in original). After determining that Maddox's migraines were severe, the ALJ placed limitations on her exposure to environmental triggers like temperature, vibrations, and fumes. The ALJ also limited Maddox to no concentrated exposure to bright flashing lights and exposure to no more than moderate noise. Maddox complains that these limitations are unexplained and illogical, but because they are restrictive (suggestive of impairment), we do not understand her to contend that it was error to impose them. Instead, her primary issue with the RFC appears to be the omission of other limitations.

On that subject, Maddox contends that the record compelled the ALJ to include restrictions in the RFC such as having to lie down frequently during the day, being off-task more than 10% of the time, and being absent more than once in the first 30 to 90 days of a job. The support for these specific restrictions (any of which seems to be work-preclusive) is minimal, however, as Maddox does not point to medical evidence or opinions to back them up. That leaves only Maddox's testimony. But she said little at the hearing about how migraines affected her daily activities, other than that they usually occur two to three times a month and are "incapacitating." And the ALJ determined that Maddox's description of her subjective symptoms was not fully consistent with the record, so Maddox must overcome that finding.

This court defers to an ALJ's credibility assessment unless it is "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citing *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008)). But the ALJ must still explain her evaluation "in a rational manner, logically" and base it on "specific findings and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011).

Here, the ALJ reasonably decided to not fully credit Maddox's report of her headaches and migraines, and not include any additional limitations in the RFC. As noted, no medical opinion or other evidence in the record supports the additional limitations that she proposes. And the ALJ explained that she could not fully credit Maddox's own account of her migraine symptoms because medical providers noted that Maddox's complaints of her headaches were "vague," and that she was laughing and smiling during an exam despite a reported headache. The ALJ also questioned Maddox's credibility regarding her other pain and impairments (which she has not challenged on appeal). For example, Maddox complained of pain and musculoskeletal impairments, but medical examiners reported no muscle weakness or joint stiffness, normal gait, and no swelling or atrophy. The ALJ also cited inconsistences between the

medical evidence and Maddox's reports of damage and ongoing complications from her rectal surgery. Taken together, the ALJ gathered sufficient evidence for her determination that Maddox's subjective complaints about the frequency and severity of her symptoms, including those caused by migraines, were not entirely credible.

Finally, Maddox asserts that the ALJ was impermissibly "playing doctor" (a "bad one," no less) by assigning unsupported environmental restrictions for the migraines but disregarding medical evidence for others. Although the ALJ could have better explained the reason for the environmental limitations in the RFC, Maddox does not identify any medical evidence in the record that the ALJ overlooked when assessing what limits her severe migraines caused. Maddox discusses the records and treatment from Dr. Khatri that conclude Maddox has migraine headaches, but she does not explain what aspect of these records the ALJ failed to consider, because Dr. Khatri does not opine on any functional limitations from the migraines. We reject Maddox's argument that the ALJ "misunderstands standard medical practice," and we decline to consider excerpts of medical studies and diagnostic information about migraines that Maddox has submitted which are not part of the record.

### III.  Conclusion

Because substantial evidence supports the ALJ's decision, the judgment of the district court is

AFFIRMED.